**UNITED STATES of America**

v.

**Marion Southall BUTLER.**

**Cr. No. 6195.**

United States District Court
E. D. Virginia,
Richmond Division.

Dec. 3, 1957.

L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., R. R. Ryder, Asst. U. S. Atty., Richmond, Va., for the United States.

A. Scott Anderson, Richmond, Va., for petitioner.

WALTER E. HOFFMAN, District Judge.

Petitioner, Marion Southall Butler, was convicted by a jury on a charge of conspiring to violate the Internal Revenue laws relating to liquor. He was sentenced to a term of imprisonment for three and one-half years and a fine of $1,000, but not to stand committed for non-payment of said fine. Petitioner perfected his appeal and the judgment of the District Court was affirmed. Butler v. United States, 4 Cir., 243 F.2d 567. The appeal was described as "frivolous". It will be noted that at no time during the trial in the District Court or on appeal before the United States Court of Appeals for the Fourth Circuit did petitioner suggest the grounds for a new trial now asserted.

Petitioner has filed a motion to vacate the sentence under 28 U.S.C.A. § 2255, alleging, in substance, that he was denied effective representation of counsel by reason of the fact that his *privately employed* attorney was under the influence of narcotics during the trial in the District Court, and that, subsequent to the finding of guilt by the jury, another privately employed attorney was requested to bring this matter to the attention of the trial judge but failed to do so. As the allegations set forth in the motion seriously affect the legal profession, the Court, upon request of petitioner, appointed an able and outstanding attorney to represent petitioner in the present proceedings. For reasons which may be apparent, the attorney charged with being under the influence of narcotics during the trial will be designated as "Mr. X".

Petitioner was indicted by a grand jury, on the charges for which he was ultimately convicted, at the July 1956 Term. The employment of Mr. X relates back to April 12, 1956, when petitioner's sister gave the attorney a check in the sum of $25, at which time petitioner was involved in other difficulties relating to whiskey charges. It is generally conceded that Mr. X is addicted to the use of narcotics (morphine), having commenced taking drugs during the first two months of 1956. In fact, Mr. X is now confined at the United States Public Health Service Hospital in Lexington, Kentucky, as a condition of probation imposed by District Judge Bryan under a conviction for a misdemeanor relating to the use of forged prescriptions for narcotics with knowledge that said prescriptions were forged. The trial of Mr. X was in October, 1957, and his testimony in this proceeding was taken immediately prior to his departure for hospital treatment.

It is admitted by petitioner that he knew of the arrest of Mr. X, on or about October 1, 1956, on the narcotic charge. The case involving petitioner was heard on December 17–18–19, 1956, and petitioner admits that following the arrest of his attorney, petitioner suggested to Mr. X that perhaps new counsel should be employed but, according to petitioner, he was persuaded by his attorney not to make any change of representation. Mr. X was indicted by a grand jury, convened at Alexandria, Virginia, on the first Monday in December, 1956. Mr. X testified that petitioner knew of his addiction to drugs, as well as his arrest and indictment, but never requested any change of counsel. Whichever version of the testimony the Court may accept, it nevertheless follows that petitioner knew, at the time of trial and long prior

thereto, all of the pertinent facts concerning which he now complains.

It is extremely doubtful whether petitioner may now be heard to complain of acts which could readily have been called to the attention of the trial court but, assuming arguendo that he has not forfeited such rights, the ultimate test is a determination of the conduct of the trial in an effort to ascertain whether petitioner was accorded a fair and impartial trial.

■ This Court has reviewed the transcript of testimony in the conspiracy case consisting of 455 pages. Mr. X participated vigorously in the defense of petitioner. While the arguments were not transcribed, the Court has a distinct recollection that Mr. X presented the contentions of his client with marked ability. Obviously there is no error in the record, and it is to be doubted that any attorney would have been more successful. In reviewing the proceedings of a lengthy trial, it must be appreciated that criticism is readily forthcoming from any attorney or judge not called upon to act on the spur of the moment, but it is well settled that a defendant in a criminal case cannot be heard to complain of the actions of his attorney merely because some other attorney would have adopted different trial tactics.

■ Subsequent to petitioner's conviction by the jury at 12:50 a. m. on December 19, 1956, petitioner employed George E. Allen, Sr., an able and experienced attorney, for the purpose of arguing a motion for a new trial and perfecting an appeal if necessary. While petitioner alleges and testified that Mr. Allen was also requested to call to the attention of the trial judge the fact that Mr. X was under the influence of narcotics during the trial, this statement is strenuously denied by Mr. Allen and the Court accepts the latter's testimony on this point. Over petitioner's objection, the Court permitted the introduction of correspondence between petitioner and his attorney, Mr. Allen, and a review of these letters fails to indicate that petitioner ever complained of the conduct of Mr. X. While the rule with respect to privileged communications between attorney and client should be zealously guarded, yet this privilege may be destroyed by the acts of the client in attacking the attorney on a charge of dereliction of duty. It will be noted from Mr. Allen's testimony that he is of the opinion that petitioner was accorded a fair trial; that he was effectively represented by Mr. X; that Mr. Allen did not recommend an appeal and thought it useless to pursue same; and that, if any error was committed, it was the error of the Court in upholding the contention of Mr. X to the effect that certain evidence obtained by an alleged unlawful search should be rejected.

It is to this latter point that the main force of petitioner's argument is directed. Certain evidence as to petitioner's activities on January 5, 1956, was introduced, at which time petitioner was arrested by federal and state officers at Tappahannock, Virginia, while hauling a load of illegal whiskey. No advance motion to suppress the evidence was made in accordance with Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., and, after the testimony identifying petitioner was before the jury without objection, Mr. X cross-examined the federal officer at length. At the conclusion of this testimony Mr. X made the following statement:

> "If your Honor please, not at this time while the jury is present, but when we have an opportunity, I would like to make a motion to the Court. I reserve that right at this time."

Upon further consideration of the evidence, the Court at first expressed the opinion that the testimony was properly admitted, but later reversed itself and excluded the evidence by instructing the jury in no uncertain terms that such evidence must be disregarded. Again, in the final charge to the jury, the jurors were told that such search was illegal. In Butler v. United States, supra, the Court disposed of this point by noting that the trial judge instructed the jury

not to consider the evidence obtained by the search claimed to be illegal.

While it may be the better practice for counsel to avail themselves of opportunities afforded by an advance motion to suppress evidence where a jury is hearing the case, the failure to do so cannot be asserted as grounds for relying upon ineffective representation of counsel. It could be argued that counsel's success in persuading the Court to rule with him on this point constitutes an effective weapon in the minds of the jury, with the jurors perhaps laboring under the mistaken belief that the Court was of the opinion the defendant was not guilty under the law. Moreover, Mr. X testified that petitioner had not fully explained to him the events which transpired on January 5, 1956, when petitioner was operating a truck loaded with illegal whiskey. Perhaps an abler attorney would have raised the point at an earlier stage of the testimony, but if there is merit to petitioner's contention on this point, it would open the avenue of freedom to all defendants in criminal cases who have been subjected to evidence being introduced and thereafter excluded by instructions of the court. It would, in effect, preclude action by a court in excluding improperly admitted evidence.

It is argued that, during the trial, Mr. X was "jittery"; that he left the courtroom on several occasions without permission; that he fell asleep at least twice during the proceedings; and that Mr. X was eating candy throughout the trial. These contentions are wholly without merit. It is not unusual for the ablest attorney to become nervous during a trial. As the trial judge learned, after the trial commenced and during a brief recess, that Mr. X was under indictment for violations of the narcotic laws, the Court took particular care to observe that Mr. X was present when testimony was being presented concerning petitioner. In the trial of this conspiracy case much evidence was submitted which could not adversely affect the petitioner, and Mr. X admits that he did leave the courtroom on one occasion when testimony not relating to petitioner's activities was being presented. A review of the transcript reveals that Mr. X examined all witnesses touching upon his client's activities. Indeed, of the five defense attorneys, Mr. X participated more vigorously than any of the others. While there is evidence that Mr. X did, on occasions, place his head in his hands and that he may have been "dozing" at the time, there is no suggestion that such action was prejudicial to petitioner.

The contention that Mr. X was eating candy throughout the trial supports the view that the attorney was not then under the influence of narcotics. In effect, partaking of candy is a substitute for narcotic drugs. There is evidence pointing to the fact that Mr. X, following his release from Westbrook Sanitarium on November 4, 1956, started taking drugs again approximately thirty days thereafter. The attorney admits having taken two tablets on two different occasions prior to the trial, but insists that he did not resume taking narcotics regularly until the latter part of January, 1957, and emphatically denies that he was under the influence of narcotics during the trial. There is testimony to the effect that a known drug addict was seen in the corridor adjoining the courtroom talking with both Mr. X and the petitioner during a recess. The circumstances are admittedly suspicious and it is not beyond belief that Mr. X did take some narcotic drug during the trial. But if he did, the fact was known to petitioner at that time and no complaint was registered. Assuming that some drug was taken by the attorney, the extent of the dosage is not indicated and medical testimony points to the fact that an addict, after withdrawal, will start taking smaller doses and gradually build up again to the addict stage. Undoubtedly narcotic drugs taken in the addict stage are sufficient to affect the mental processes of an individual but, in the final analysis, the trial judge is better able to determine to what extent these processes may have adversely affected the conduct of a court

trial. As this Court is unable to certify that the acts of Mr. X were so apparent as to indicate that the attorney was "influenced" by narcotics, it follows that petitioner was not adversely affected by any such action.

■ In a proceeding to vacate a sentence under 28 U.S.C.A. § 2255, the petitioner must carry the burden of proof. By alleging ineffective representation of counsel, it is incumbent upon petitioner to show not only the type of representation, but also at which point such representation violated the provisions of the Constitution. The Sixth Amendment requiring that the accused shall have assistance of counsel does not mean that constitutional rights of an accused are impaired by mistakes of counsel, and petitioner must show that the proceedings were, in substance, a farce and a mockery of justice. Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667; Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 84 A.L.R. 527; Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791; Brown v. State of Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. Undoubtedly there must be "effective" representation and negligence of an attorney may be one factor pointing to the violation of constitutional rights, but in the instant proceeding there exists, at the most, a lack of judgment in not registering a more timely objection. The attorney employed by petitioner has had fourteen years of experience in the field of criminal law. Unless his conduct during the trial was such as to impose a duty upon the Court to intercede in petitioner's behalf under the belief that the proceedings were being converted into a mockery of justice, the petitioner cannot complain that his constitutional rights have been violated.

■ The present motion is a typical example of a disappointed prisoner seeking an opportunity to be released from a penitentiary by placing his former attorney on trial for misconduct. What-ever may be the sins of Mr. X by reason of his unfortunate addiction to drugs, there is nothing in the record to indicate that petitioner did not receive a fair and impartial trial.

Motion denied.