[Crim. No. 7606.   Second Dist., Div. Two.   Oct. 16, 1961.]

THE PEOPLE, Respondent, v. ALFRED SILVERS, Appellant.

Gerald J. Levie for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Edmond B. Mamer, Deputy Attorneys General, for Respondent.

FOX, P. J.—Defendant was convicted of violating Penal Code section 337a, subdivision 4 in that on or about October 22, 1960, he recorded and registered a bet upon the result of a football game. He has appealed from the judgment.

Prior to the date above mentioned, Officer Briggs of the Los Angeles Police Department received an anonymous complaint that bookmaking was being conducted by a person known as "Al" who was described as a male caucasian in his early thirties; that he was taking wagers on football games at a public telephone pay station near the intersection of Santa Monica Boulevard and Heliotrope; that the number of said telephone was Normandy 4-9680. Further investigation disclosed that this telephone was located in a public pay 'phone booth at 4855 Santa Monica Boulevard.

Upon arriving at this location shortly after 9 a. m., on October 22, 1960, Officer Briggs observed defendant getting out of a 1960 Cadillac parked across the street and slightly west of the location of the 'phone booth. The officer thereupon went to a nearby public telephone down the street and attempted to dial the Normandy number. He was unable to get through because the line was dead.

Officer Briggs then went to the vicinity of the telephone booth. Defendant was standing in the doorway of the booth and had in his hands a section of a newspaper which was partially folded. When the officer approached he observed

that defendant had several papers within this newspaper among which were approximately five pieces of paper, about 6 by 8 inches in size, upon which were several pencil and ink notations. Standing about 2 feet from defendant, Officer Briggs read a· portion of a piece of paper with numerous notations thereon, which was lying within the newspaper but visible to him. It was stipulated that he was an expert in the manner and means, paraphernalia, signs, symbols and numerals commonly used in bookmaking relating to football games in Los Angeles County. Based upon his expert information, the officer was of the opinion that these notations were a record of wagers on football games played throughout the United States.

At substantially this point defendant folded up the newspaper and started to walk away. Officer Briggs followed him and upon reaching the sidewalk identified himself, exhibited his badge, and stated: "I am a police officer investigating a bookmaking complaint in which you are alleged to be taking bets on football games. Do you mind if I see what you have in your hand?" The defendant replied: "No, go ahead and look. These are just some bets I have written down." Defendant handed the officer the newspaper containing the aforementioned pieces of paper. One of the pieces of paper enclosed in the newspaper that defendant had been holding was, in the officer's opinion, a betting marker which recorded wagers on football games, both college and professional, played throughout the United States on that date. The newspaper also contained another betting marker on which wagers were recorded with the amount of the bets, the names of the bettors, and the names of teams indicated by a number taken from a football scoreboard card. Additionally, enclosed in this same newspaper was a football scoreboard which listed the teams that played on the week end of October 22d. It provided a place for the bookmaker to fill in the point spread, that is, the points awarded to either team as given by the handicap. There was still another football card with these papers that defendant handed to the officer. It was Officer Briggs' opinion that bookmaking was being conducted by defendant with this paraphernalia. After defendant handed these papers to the officer and he had looked at them, he then said to defendant: "You're under arrest for bookmaking." After this, Officer Briggs, in the presence of another officer, exhibited these various papers to defendant and asked him what they were. Defendant replied: "That's all on football games."

Briggs then inquired: "Are they your bets?" Defendant answered: "Some of them are mine and some of them are bets that I took from other people." Upon being asked if it was his handwriting on the betting markers and football scoreboard, defendant stated that all of it was in his handwriting. When asked where he received the various point spreads for the football scoreboards, he replied that they came from Las Vegas and were delivered to him. Officer Briggs inquired of defendant if he knew it was illegal to accept wagers on football games or sporting events. Defendant stated: "Yes, I know it's against the law but I felt it would be all right if we were doing it over the telephone and weren't passing any money back and forth while we were making the bets." When defendant was asked whether the Cadillac across the street was his, he replied in the affirmative. The officer then asked: "Do you mind if we look in it?" Defendant replied: "No, I am going to lock it up anyway if I am going to jail." They looked in the car and found another football card which listed the football games played October 22d and 23d. Several other papers relating to football games were also found in defendant's car.

Defendant did not take the witness stand and did not offer any evidence in his behalf.

In seeking a reversal defendant contends: (1) The search of defendant and his automobile was illegal because there was no reasonable cause to believe that a felony had been committed; (2) the corpus delicti was not established therefore the asserted admissions of defendant should not have been received in evidence; and (3) the evidence is insufficient to sustain the conviction. We find no merit in any of these contentions.

In *People* v. *Valdez,* 188 Cal.App.2d 750 [10 Cal. Rptr. 664], this court stated at pages 755-756: "It is not necessary for the People to show that the search and seizure were reasonable as incident to a proper arrest when the search is made with defendant's consent. [Citation.] ' ". . . if he freely consents to an entry or search, or voluntarily produces evidence against himself, his constitutional rights are not violated and any search or taking of evidence pursuant to his consent is not unreasonable." ' " Here the testimony of the officer shows the defendant voluntarily turned over the newspaper and other papers enclosed therein to the officer upon his request to see the same; and that defendant consented to the officer searching his car. It is, therefore,

336

apparent that there is no question of illegal search or seizure here involved. (*People* v. *Burke*, 47 Cal.2d 45, 49 [307 P.2d 241]; *People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852]; *People* v. *Valdez, supra.*)

Counsel, however, suggests that it was improper for Officer Briggs to stop the defendant and question him. ▌ In this connection it must be borne in mind that "[t]he strength of the information the officer requires to engage in questioning is necessarily much less than it would be to arrest and search." (*People* v. *King*, 175 Cal.App.2d 386, 390 [346 P.2d 235].) ▌ In *People* v. *Sanchez*, 189 Cal.App.2d 720 [11 Cal. Rptr. 407], the court stated at page 724: "There is certainly nothing unreasonable about police seeking an interview with a suspect . . . calling upon him for that purpose wherever he may be found—at his home [citations], place of employment [citation] or in an automobile [citations] and questioning him, where the circumstances appear to warrant such action." ▌ Here the circumstances certainly justified Officer Briggs in stopping defendant and in requesting to see the papers he had in his hand, for the officer had previously received information that betting on football games was being carried on through a certain public telephone station which further investigation had revealed was the public telephone at which the defendant had been standing, and in view of the notations which the officer observed on the papers defendant held.

▌ In arguing that the corpus delicti was not established, defendant overlooks the rule that "upon *prima facie* proof of the *corpus delicti* the extrajudicial statements, admissions, or confessions of the accused may be *admitted* in evidence . . ." (*People* v. *Selby*, 198 Cal. 426, 437 [245 P. 426]; *People* v. *McMonigle*, 29 Cal.2d 730, 738 [177 P.2d 745].) ▌ The papers found in the possession of defendant and Officer Briggs' expert testimony interpreting the notations thereon establish a prima facie showing that someone had recorded bets on football games that were to be played that week end. (*People* v. *Koerts*, 58 Cal.App.2d 9, 11 [135 P.2d 614].) With the prima facie showing of the corpus delicti having been made, the extrajudicial statements of the defendant were admissible in evidence. (*People* v. *Smith*, 176 Cal.App.2d 688, 691 [1 Cal.Rptr. 661].)

▌ Defendant's possession of the incriminating material, together with the interpretation by competent expert testimony of the notations thereon, the defendant's conduct and

his statements to the police abundantly justify the trial court's determination of his guilt.

Defendant seeks to discredit the testimony of Officer Briggs by asserting there was no basis in fact for his opinion that the notations on the papers were wagers on football games. He argues that what the officer observed would be totally impossible to interpret without comparison and correlation with other documents, none of which were visible to him. In making this argument defendant overlooks the established rule that it is the province of the trial court to pass upon the credibility of a witness and to determine the weight to which his testimony is entitled. That the trial court believed the officer is implicit in the judgment of conviction. Also, defendant's failure to testify is not without significance. The rule in this respect is stated in *People* v. *Ashley*, 42 Cal.2d 246, at page 268 [267 P.2d 271] : ''A defendant's failure to take the stand 'to deny or explain evidence presented against him, when it is in his power to do so, may be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom; those unfavorable to the defendant are the more probable.'' (*People* v. *Adamson*, 27 Cal.2d 478, 489 [165 P.2d 3].)''

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.