Application of John J. TOMICH for Writ of Habeas Corpus.

No. 1016.

United States District Court
D. Montana,
Butte Division.

Sept. 4, 1963.

R. Lewis Brown, Butte, Mont., for John J. Tomich (appointed by the court).

James J. Sinclair, Asst. Atty. Gen. of the State of Montana, Helena, Mont., for respondent State of Montana.

Donald J. Beighle, County Attorney of Powell County, Deer Lodge, Mont., for Warden of Montana State Prison.

MURRAY, Chief Judge.

The petition of John J. Tomich for Writ of Habeas Corpus having come on regularly for hearing before the court sitting without a jury, the petitioner being represented by his counsel, Mr. R. Lewis Brown, Jr., the respondent State of Montana being represented by Mr. James J. Sinclair, Assistant Attorney General of the State of Montana, and the respondent Edward Ellsworth, Warden of the Montana State Prison, being represented by Mr. Donald J. Beighle, County Attorney of Powell County, Montana, and oral and documentary evidence having been taken, the court, having considered said evidence and the briefs in support of, and in opposition to said petition, now makes the following Findings of Fact and Conclusions of Law:

Petitioner, John J. Tomich, was tried before a jury in the District Court of the Eighth Judicial District of the State of Montana, in and for the County of Cascade, and was found guilty of the charge of burglary in the first degree, together with prior convictions of felonies. Thereafter, and on January 26, 1960, pursuant to said conviction, he was sentenced to the Montana State Prison for a term of 20 years, and he is presently incarcerated in said prison in the custody of respondent Edward Ellsworth, Warden of said prison, under said sentence.

As one of the grounds for his petition for Writ of Habeas Corpus, petitioner alleges that evidence obtained from him by an unlawful search and seizure in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States was used to procure his conviction. The circumstances surrounding his arrest and the search and seizure are as follows:

On or about October 10, 1959, at about 9:00 o'clock in the morning, the petitioner, in his own automobile, was parked off the road on Montana Highway 48 between Warm Springs and Anaconda, Montana. At about that time, the sheriff and deputy sheriff of Deer Lodge County, Montana, were on their way from Anaconda to Warm Springs, Montana, to serve some papers, and noticing petitioner's automobile pulled off the highway, stopped to investigate. The deputy sheriff ordered petitioner out of his automobile and searched his person, and the front and back seat of his car. After questioning petitioner, and ascertaining by radio that the automobile was registered in petitioner's name, and also that petitioner did not have his driver's license with him, they released him and proceeded on their way to Warm Springs. At that time, both officers knew petitioner as an ex-convict, but they were not looking for him and had no information at all connecting him with any offense. Apparently, the search of his person and the front and back seat of his car and the questioning of petitioner at that time was based solely on the fact that he was parked on the side of the road and was an ex-convict. However, these searches of petitioner's person and automobile turned up nothing, and petitioner was released at that time.

Some short time thereafter, when the officers had completed their work at Warm Springs and were returning to Anaconda, they observed petitioner in his automobile proceeding on the highway toward Warm Springs. There was nothing in the manner in which petitioner was operating his automobile at that time that would warrant the officers in stopping him or that would arouse any suspicion, but nevertheless, the officers stopped petitioner on the highway and placed him under arrest for not having a driver's license. After arresting petitioner, the officers directed him to drive to Anaconda in his own car, with the officers following him in their car. Enroute to Anaconda the two cars stopped at Opportunity, a small community, apparently to check petitioner's statement that he had been calling on his aunt who lived there. However, no one was at home at the aunt's house.

While they were stopped at the aunt's home in Opportunity, the officers asked petitioner if they might look in the trunk of his car. Petitioner replied that he didn't mind, but when they attempted to open the trunk it was locked and petitioner told the officers that he didn't have a key. The fact of the matter was that petitioner had the key to the trunk in his shoe, but did not want the officers to get into the trunk because he knew that in the trunk were tools which he feared that the officers would regard as burglar tools in view of his record, and also some narcotics which petitioner had for his personal use.

Thereupon, the officers directed petitioner to drive to the Buick Garage in Anaconda, following him in their car. On the way to Anaconda the sheriff and deputy sheriff contacted the Chief of Police of the City of Anaconda and arranged for him to meet them at the Buick Garage, which he did. When they arrived at the Buick Garage the officers had a mechanic attempt to open the trunk with a bunch of keys he had on hand, and when this proved unsuccessful, they had him remove a door handle from the car and take it to a key shop to have a key made. When the mechanic returned with the key the officers ascertained that the key fit the trunk lock by opening the trunk. However, no search of the trunk was conducted there, but the trunk was immediately closed and petitioner was directed to drive to the sheriff's office, followed by the sheriff, deputy sheriff and Chief of Police in the sheriff's car. At the sheriff's office, they were joined by other officers and proceeded to search the trunk of petitioner's car. Found in the search and seized and later used as evidence in petitioner's burglary trial in Great Falls were some tools and a pair of shoes.

The officers had no search warrant to search petitioner's car. They did not even have probable cause upon which to obtain a warrant. No contention is made that the search was one incidental to a lawful arrest. Indeed such a contention could not be sustained, as the evidence shows that the arrest was a sham merely to enable the officers to search the car. The testimony of Deputy Sheriff Jensen, who incidentally is the only witness who testified for the State in opposition to the petition, is quite revealing in this respect. He testified:

"Q. Then is it your usual practice when you arrest someone for a driver's license to search their trunk?

"A. No, it isn't.

"Q. And especially if the trunk is locked, do you go to the trouble of getting a key made to open the trunk of the car?

"A. Only inasmuch as we knew the record of Mr. Tomich.

"Q. What did you think you might find in there?

"A. We didn't know what we might find."

■ Petitioner's prior criminal record did not deprive him the constitutional guaranty against unreasonable search and seizure or authorize the search and seizure without a warrant. Nelson v. United States, 1953, 93 U.S.App.D.C. 14, 208 F.2d 505, 513.

■ Clearly under these circumstances the search was unreasonable and illegal and in violation of petitioner's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, unless it was consented to by the petitioner. As a matter of fact, the only basis on which the state attempts to sustain the search is on the ground that it was consented to.

■ While a search and seizure otherwise unreasonable and illegal may be consented to, such consent is not to be lightly inferred, but must be proved by clear and positive testimony, and there must be no duress, actual or implied and the consent must be unequivocal and specific and freely and intelligently given. Pekar v. United States, C.A.5, 1963, 315 F.2d 319; McDonald v. United States, C.A.10, 1962, 307 F.2d 272; Channel v. United States, C.A.9, 1960, 285 F.2d 217; Nelson v. United States, 1953, 93 U.S. App.D.C. 14, 208 F.2d 505; Higgins v.

United States, 1954, 93 U.S.App.D.C. 340, 209 F.2d 819; Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649. To protect his right to object to an unreasonable search and seizure a defendant need not forcibly resist the officers' authority to conduct the search. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L. Ed. 654; People v. Michael, 1955, 45 Cal. 2d 751, 290 P.2d 852.

In this case Deputy Sheriff Jensen testified that on at least three occasions, at Opportunity, at the Buick Garage, and at the sheriff's office, the petitioner gave his consent to the search. Petitioner denied that he gave any consent, but admitted that he raised no objection. When asked why he did not object, although he knew there were narcotics and tools that could be considered burglar tools in the trunk, petitioner replied that in his previous experience with officers attempts on his part to assert his rights had led to "the officers becoming nasty" with him. At the time when he allegedly gave his consent to the search, he was under arrest, and alone in the presence of two, three and more officers. At all the times when he was allegedly consenting to the search, he had in his possession, hidden in his shoe, the key to the trunk. If he truly consented to the search, he would have delivered up the key to the officers and saved them all the trouble they went to to get into the trunk of the car.

■ Upon evidence of consent at least as strong if not stronger than that presented by the record here, the courts in Pekar v. United States, supra; Channel v. United States, supra; Nelson v. United States, supra; Higgins v. United States, supra; Judd v. United States, supra; and Castaneda v. Superior Court of Los Angeles County, 30 Cal.Rptr. 1, 380 P.2d 641, have found no consent. In this case, the record compels the finding that petitioner did not freely give his unequivocal and specific consent to the search without a warrant.

The State, however, contends that by failure to present a pre-trial motion to suppress the illegally seized evidence, under Montana law he waived his right to object to the introduction of such evidence, citing Peters v. State, 139 Mont. 634, 366 P.2d 158 (1961). Whether the failure of petitioner to have moved to suppress would preclude this court's granting a writ of Habeas Corpus for violation of his rights against unreasonable search and seizure under the Fourth and Fourteenth Amendments is questionable under the holding of the Supreme Court of the United States in Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. In that case the Supreme Court said at pages 398–399 of 372 U.S., at page 827 of 83 S.Ct.:

"We hold: (1) Federal courts have power under the federal habeas statute to grant relief despite the applicant's failure to have pursued a state remedy not available to him at the time he applies (for the federal writ); the doctrine under which state procedural defaults are held to constitute an adequate and independent state law ground barring direct Supreme Court review is not to be extended to limit the power granted the federal courts under the federal habeas statute."

However, aside from the effect of the Supreme Court's holding in Fay v. Noia, supra, the contention that petitioner waived his right to object to the introduction of the illegally seized evidence brings us to a second ground alleged by petitioner in his petition for Writ of Habeas Corpus, and that is that he was deprived of the effective assistance of counsel.

■ In this connection it has been stated that "The Sixth Amendment requiring that the accused shall have the assistance of counsel does not mean that constitutional rights of an accused are impaired by mistakes of counsel, and petitioner must show that the proceedings were, in substance, a farce and a mockery of justice (Citing cases)." United States v. Butler (D.C.E.D.Va., 1957), 167 F.Supp. 102, 106. In other words, counsel is not to be second guessed on mai-

ters of judgment or trial strategy, or even mistakes, and any poor result caused by these matters does not amount to a denial of assistance of counsel.

However, it has also been stated that "the right to counsel means the right to the conscientious services of competent counsel. (Citing cases.) Mere perfunctory appearance for a defendant is not enough. (Citing cases)." United States v. Wight, C.A.2, 1949, 176 F.2d 376. "Undoubtedly there must be 'effective' representation and negligence of an attorney may be one factor pointing to the violation of constitutional rights." United States v. Butler, supra, 167 F.Supp. at 106. In view of the evidence in this case, the court must reluctantly conclude that the case falls in the latter category and that petitioner was deprived of the effective assistance of counsel, for the reasons hereinafter set forth.

After petitioner was arrested as above related and placed in jail at Anaconda, he was first committed to the State Hospital at Warm Springs, Montana, for a narcotic addiction cure. While in the State Hospital he was visited by the daughter of his former wife, who advised him that the former wife would procure the services of Mr. W. L. Coyle, an attorney to defend him on the burglary charge which had been filed against him in Great Falls as a result of the evidence discovered in the search of his car above referred to. Thereafter, petitioner was removed to the Cascade County jail in Great Falls. When petitioner was first brought into court for arraignment on December 2, 1959, upon inquiry by the court as to whether he had an attorney, petitioner replied that Mr. Coyle was to represent him, but Mr. Coyle was not then present and the arraignment was continued until December 7, 1959. The arraignment was again continued until December 21, 1959. In the meantime petitioner, having seen a statement in the newspaper purportedly by Mr. Coyle to the effect Mr. Coyle would not represent him, wrote the District Judge a note asking for the appointment of counsel. However, when he was brought into court for arraignment on December 21, 1959, Mr. Coyle was present in the courtroom, and a plea of not guilty was entered. This was the first and only time petitioner saw Mr. Coyle prior to his trial, which commenced on January 18th, 1960. At the time of the arraignment, counsel conferred with petitioner for only a few minutes, during the course of which conference he stated to petitioner, "I suppose you will get back on the narcotics if I get you out of this. I don't care whether you are guilty or not. I don't want to hear anything about the crime. All I want you to do is not to take the stand." Petitioner was given no opportunity by his counsel to relate the circumstances surrounding his arrest and the search and seizure prior to trial. The next time petitioner saw his lawyer was when the trial commenced and for the first time had the opportunity to inform his counsel of the illegal search and seizure. Objection to the introduction of the illegally seized evidence was made at the trial, and overruled, and at least one basis upon which the objection was overruled was that no pre-trial motion to suppress had been made, according to the affidavit of the trial judge.

Petitioner also states there were two witnesses who knew he was in Helena, Montana, at the time the offense was committed in Great Falls, and he advised his lawyer of that fact at the start of the trial, which was the first opportunity he had to tell him, and his counsel refused to subpoena said witnesses. No testimony or evidence was offered on behalf of the defense.

After his conviction, petitioner desired that an appeal be taken, and despite assurances by his counsel that an appeal would be taken, the time for taking an appeal was permitted to expire without the appeal being filed. Counsel failed to perfect an appeal, and also failed to advise petitioner that he would not represent him on appeal in time for petitioner to attempt to secure other counsel, or to attempt the appeal himself. There was certainly no "intentional relinquishment" of petition's known right to appeal by a

"considered choice" on his part. See Dodd v. United States, 321 F.2d 240, C. A.9, 1963.

The failure of counsel to consult with and even listen to petitioner's story, the failure to make a pre-trial motion to suppress as required under Montana law, the refusal to subpoena alibi witnesses, apparently without any attempt to investigate as to what they might know about the case or their reliability, and the failure to take an appeal within the time permitted, while at the same time assuring petitioner that such appeal would be taken, all require the finding that petitioner was without the "effective" assistance of counsel that is guaranteed by the Constitution.

The court further finds that petitioner has exhausted all available state court remedies (Petition of Tomich, 139 Mont. 611, 358 P.2d 78; Petition of Tomich, 139 Mont. 620, 362 P.2d 552; Petition of Tomich, 139 Mont. 624, 365 P.2d 950; Tomich v. State, 139 Mont. 632, 366 P.2d 159; Tomich v. State, Mont., 377 P.2d 756; Tomich v. State, Mont., 379 P.2d 114), and that he had no remedy available to him in the State Courts of Montana, at the time of the filing of this petition in this court, or now. Fay v. Noia, supra.

For the foregoing reasons the court is required to conclude that petitioner's conviction and present confinement are illegal and in violation of his rights under the Fourth, Sixth and Fourteenth Amendments to the Constitution of the United States, and that the conviction should be set aside and he should be released from said confinement. However, the state should be given the opportunity to consider whether it desires to retry petitioner on the burglary charge.

Therefore, it is ordered and this does order that he be discharged from the custody of the Warden of the Montana State Prison unless within 10 days from the date of this order a new trial has been ordered for petitioner.

The court wishes to express its appreciation and thanks to Wade J. DaHood of Anaconda, Montana, and R. Lewis Brown, Jr., of Butte, Montana, who served in this case as court appointed counsel for petitioner for their excellent performance of duties under the court's appointment.