[Crim. No. 4595. First Dist., Div. Three. Feb. 5, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE CURRIER, Defendant and Appellant.

William D. Eaton, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Albert W. Harris, Jr., and James Murad, Deputy Attorneys General, for Plaintiff and Respondent.

DEVINE, J.—Appellant was convicted of possession of marijuana, a violation of Health and Safety Code section 11530, after the narcotic had been found in his hotel room. His arrest and the entry and search of the room were done without arrest or search warrant. The prosecution contends that the arrest was lawful because it was based upon reasonable cause to believe that appellant had committed a felony; that the search of the room was incident to a lawful arrest; and that the search was also justified because appellant had consented to it.

*Facts and Decision as to Lawfulness of the Arrest*

The officers had gained information, about 14 months before the arrest, from a police officer attached to the juvenile division, that appellant was active in narcotics traffic. There had been anonymous telephone calls to the police, in which callers had said that a young man named George Currier was living at a hotel in the area of 41st Street and Piedmont Avenue, that he had a lot of people coming and going, and that it was obvious that he was doing something. Another anonymous caller had been less specific in one way, that is, the caller did not name appellant but referred to a "young man" who approached young girls as they got off the bus at 41st and Piedmont, and that thin cigarettes had been given to the girls in exchange for money.

On October 15, 1963, at 9:30 p.m., two officers in plain clothes, driving an unmarked police car, saw appellant as he emerged from the hotel where he lived. Officer Romero recognized appellant on the basis of a mug shot he had seen previously. As appellant walked away from the hotel, he turned in the direction of the police car and said, "Did somebody call me?" At the same time, he put his right hand into his shirt pocket. Officer Romero stepped out of the police car and informed him that he was a police officer. Appellant immediately turned and ran. Officer Romero ran after him. Appellant ran down a path towards a library, and as he ran he made a throwing motion with his right arm. Officer Romero

caught appellant at a gate leading into the library premises, and after a brief struggle, handcuffed him and placed him in custody. He was asked what he was running from. The officer testified that he replied that he "had a $40 warrant out of Piedmont and that's why he was running." Appellant was searched. A torn, rolled up matchbook cover, with burn marks on it, was found on his person. This was described by Officer Romero as a "crutch," a device used for the purpose of smoking a cigarette so that the cigarette may be totally consumed. A package of wheat straw paper was also found on appellant. He denied throwing anything as he ran from Officer Romero. A search of the area where appellant made the throwing motion revealed nothing.

Appellant's contention that his arrest was illegal on the ground that it was not based on reasonable cause to believe he had committed a felony, cannot be sustained. ▪ Penal Code section 836, subdivision 3, authorizes a police officer to arrest without a warrant "Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed." There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts. (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Esters,* 220 Cal.App.2d 917, 920 [34 Cal.Rptr. 264].) Reasonable cause has generally been defined to be "such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People* v. *Ingle, supra,* p. 412.)

▪ A police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man that such a course is necessary in the discharge of his duties. (*People* v. *Alcala,* 204 Cal.App.2d 15, 19 [22 Cal.Rptr. 31].) ▪ Here, the officers observed appellant leaving his hotel in the middle of the evening. Officer Romero recognized appellant and knew that he had been the subject of several anonymous telephone calls implicating him in narcotics traffic. ▪ The strength of the information an officer requires to engage in questioning is necessarily much less than it would be to arrest. (*People* v. *King,* 175 Cal. App.2d 386, 390 [346 P.2d 235]; *People* v. *Silvers,* 196 Cal. App.2d 331, 336 [16 Cal.Rptr. 489].) ▪ We conclude that sufficient reason existed to stop appellant and interrogate him.

While information received from anonymous informants is not alone sufficient to justify an arrest, it may be considered along with other facts and circumstances known to the officer. (*People* v. *Reeves*, 61 Cal.2d 268, 273-274 [38 Cal.Rptr. 1, 391 P.2d 393].) Here, Officer Romero identified himself as a police officer. Appellant immediately fled, and during his flight was seen to make a throwing motion.

When a person who is approached by an officer engages in furtive conduct, the officer may well be justified in arresting him in view of the officer's prior information and his knowledge of the person's background. (*People* v. *McMurray*, 171 Cal.App.2d 178, 185 [340 P.2d 335].) It is the information known to the police officer or the suspicious circumstances which turn an unusual act into a furtive one. (*People* v. *Tyler*, 193 Cal.App.2d 728, 732 [14 Cal.Rptr. 610].)

Here, there was not only the suspicious circumstance of appellant's flight, but the throwing motion as well. We believe this conduct, when coupled with the officer's prior knowledge, provided sufficient basis to support a reasonable belief that appellant was attempting to dispose of contraband in his possession. His arrest was therefore lawful. (*People* v. *Hilliard*, 221 Cal.App.2d 719, 723-724 [34 Cal.Rptr. 809]; *People* v. *Williams*, 220 Cal.App.2d 108, 113 [33 Cal.Rptr. 765].)

We have examined the cases of *Gascon* v. *Superior Court*, 169 Cal.App.2d 356 [337 P.2d 201], and *People* v. *Zabala*, 217 Cal.App.2d 550 [31 Cal.Rptr. 712], and do not find them in point. In *Gascon*, the arresting officers had no previous knowledge about the defendant. Moreover, his flight occurred only after he was threatened with an improper search. In *Zabala*, information allegedly received from an informant was not disclosed at the trial. Furthermore, the officer who made the arrest did not see the defendant make a throwing motion, or discard the contraband which later formed the basis of his conviction.

### Facts and Decision on the Search as Claimed to be Incident to the Arrest

Following the arrest described above, the officers made a search of appellant's room. Several acts on the part of the officers, of appellant, and of his landlady, which preceded their entry into the room, are described below under the topic of appellant's asserted consent. At this point, it is sufficient to say that the hotel is about 250 feet away from the place of arrest. Therefore, even though appellant's arrest was

lawful, search of his room cannot be justified as a search made incident to an arrest, as the trial judge found it to be. In *People* v. *Cruz,* 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889], the Supreme Court said: ". . . a search is not 'incidental to an arrest' unless it is limited to the premises where the arrest is made; is contemporaneous therewith; has a definite object; and is reasonable in scope." Here, as we have noted, appellant's arrest was accomplished away from his hotel, after a chase down a pathway leading to certain library premises. Appellant was not arrested in his room, or even in the hotel where he maintained his room.

*Facts and Decision as to the Claim of Consent to Search*

We have examined the legality of the arrest above, partly because appellant has invoked the rule of *People* v. *Haven,* 59 Cal.2d 713, stated at page 719 [31 Cal.Rptr. 47, 381 P.2d 927], that a search made pursuant to consent secured immediately following an illegal arrest is inextricably bound up with the illegal conduct. We have expressed our view that the arrest was legal. The next consideration is whether the alleged consent was truly given. ▆▆▆ We accept as true, because the trial court did so, the testimony of an officer that the words purporting to give consent on two occasions, related below, were spoken by appellant, despite appellant's denial.

This, however, does not end the matter. Recent decisions of the Supreme Court of this state have imposed on us the duty of deciding, as a matter of law, whether the words of permission constituted an actual consent. In *Castaneda* v. *Superior Court,* 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641], a writ of prohibition against trial of a charge of possession of heroin was granted, although the accused had told the officers they could " 'go ahead and look' " (p. 441) when he was asked if he had narcotics at his house. The court found these words of acquiescence to have been overbalanced by the facts that petitioner was not only under arrest but was handcuffed and had no choice but to go where the officers took him; and that he attempted to lead the officers away from his home (p. 443). In *People* v. *Shelton,* 60 Cal.2d 740 [36 Cal.Rptr. 433, 388 P.2d 665], judgment of conviction was reversed on the ground of illegal search, despite the testimony of an officer that when he suggested they go to Shelton's apartment and take a look, Shelton replied, " 'All right, go ahead' " (p. 745). The combination of the facts that Shelton was under arrest at the time and that Shelton refused to assist the officers in gaining access to the apartment (when an occupant of the

apartment called out asking who had knocked at the door, the officers asked Shelton to say it was he and he refused), was sufficient to show, as a matter of law, that there was no real consent (p. 745).[1]

The facts on this issue of consent are now given. ▮ When appellant was asked by the police if he lived at the hotel he said no. Officer Romero then went into the hotel and found from the landlady that Currier did live there. The officer asked the landlady to let him search the room but she refused unless he had a warrant. In this, as the United States Supreme Court was soon to say, the officer was wrong and the landlady was right. (*Stoner* v. *California,* 376 U.S. 483 [84 S.Ct. 889, 11 L.Ed.2d 856].) Officer Romero then went back to Currier, who was in the police car, and spoke to him again. Currier then said that he did live there, and in reply to a question if it was all right to go and search, said "Go ahead." He further said that anything found there was not his because he had a friend who had stayed there several nights back. Thereupon, four officers brought Currier to the hotel, his hands handcuffed behind his back.

The officers asked the landlady to let them in, and again she said there should be a search warrant. The officers said, "Managers usually co-operate with us." The landlady testified the tenant did not either object or ask her to let them in, but that she went and got the keys and admitted the officers to the room. Officer Romero testified that at this, his second encounter with the landlady, he asked again if they could search and she went out and got the key. He testified he asked Currier again if the officers could search, and again Currier said to go ahead, that anything found would not be his because a friend had been staying with him. The officer was asked where the landlady was standing at the time Currier spoke, and he said she "could have been in front of the door to open it." She opened the door and the officers went in.

Currier testified on the limited issue of consent. He testified that the officers did not ask if they could go into the room, that he did not give consent for his room to be opened, and that he did not want them in the room.

A crucial item of evidence is that of appellant's key. He

<hr>

[1]Several cases cited in this opinion, namely, *Stoner* v. *California,* 376 U.S. 483 [84 S.Ct. 889, 11 L.E.2d 856]; *People* v. *Shelton,* 60 Cal.2d 740 [36 Cal.Rptr. 433, 388 P.2d 665]; and *People* v. *Cruz,* 61 Cal.2d 861 [40 Cal.Rptr. 841, 395 P.2d 889], were decided after the court found Currier guilty.

had this in his pocket all the time, he testified, but the searching officer did not find it. The key was found at a later search of appellant and a receipt was given by the police, and it was produced at the trial, having been obtained by appellant by subpoena. The landlady, who was called as a witness for the People, testified that when the officers came, on the second visit, they asked her to let them in because Currier had said he did not have a key.

In *Application of Tomich,* 221 F.Supp. 500, affirmed 332 F.2d 987, a writ of habeas corpus was granted after judgment of guilty by a state court, and the prisoner was ordered discharged unless a new trial were ordered. Citing *Castaneda* v. *Superior Court, supra,* 59 Cal.2d at page 503, the court said that the consent therein was stronger than that presented in the *Tomich* case. The *Tomich* case had considerable similarity to that of *Currier.* In *Tomich,* the petitioner consented to search of the trunk of his automobile, but told officers he did not have a key. Actually, he did have a key to the trunk in his shoe. The officers caused a key to be made, opened the trunk rack and found burglar's tools.

We do not decide the issue of consent, however, on any single circumstance, but on all the circumstances, as we must under the rule announced in *Castaneda,* at page 442. ▓▓ To begin with, there is a prima facie case against the search when it is made without a warrant. (*People* v. *King,* 60 Cal.2d 308, 311 [32 Cal.Rptr. 825, 384 P.2d 153] ; *People* v. *Shelton, supra,* 60 Cal.2d 744.) ▓▓ The combination of circumstances which impels us to decide that, despite the words of consent, no real permission to search was given, consists of (1) appellant's denial, until it was useless, that he lived at the hotel (we recognize that the testimony is that the words of consent came later than this futile denial; it is, nevertheless, one of the several circumstances to be considered) ; (2) the officer's eagerness, shown by his request to the landlady before any consent by appellant had been asked; (3) the fact that appellant was under arrest and handcuffed; (4) appellant's withholding of the key and denial to the police that he had it; (5) the fact that opening of the door by the landlady was accomplished not by her getting consent from appellant, but by an officer's suggestion that "managers usually co-operate."

This is not done by way of commendation of appellant's dissembling. (*Castaneda* v. *Superior Court, supra,* p. 443.) Indeed, attempted deceit usually acts against a defendant on the general issue of guilt. But the suspect need not help the

police in getting evidence against him (*id.*, p. 443). Search by warrant was available. When police seek the easier way, consent, rather than the safer one, warrant, they act at the risk that the consent may not be genuine, at least where the suspect's acts or statements indicate that he will, if possible, defeat the inquiry by deception and subterfuge. Here, the police had clues from the conduct of appellant (flight, the lame excuse for flight, the throwing motion, the denial of residence) that true consent would be withheld. The rule of *Castaneda* and *Shelton* must be applied.

Judgment reversed.

Draper, P. J., concurred.

SALSMAN, J.—I dissent.

I agree that appellant was lawfully arrested and properly in custody. I also agree that search of appellant's room could not lawfully be accomplished, in the absence of a search warrant or consent, under rules reiterated in *People* v. *Cruz,* 61 Cal.2d 861 [40 Cal.Rptr. 841, 395 P.2d 889]. I disagree with the proposition that appellant's consent to search is invalid as a matter of law.

There are no unusual facts presented here, such as are found in *Castaneda* v. *Superior Court,* 59 Cal.2d 439 [30 Cal. Rptr. 1, 380 P.2d 641], *People* v. *Shelton,* 60 Cal.2d 740 [36 Cal.Rptr. 433, 388 P.2d 665], and *Application of Tomich,* 221 F.Supp. 500. In *Tomich,* for example, the officers did not have reasonable cause, or any cause, to arrest defendant. They made an arrest despite lack of cause, and claimed their later search was by consent. In *Castaneda* the petitioner was lawfully arrested in the City of Lynwood and later taken to the City of Compton; he twice misdirected the officers to residences where he was supposed to have narcotics, but search of one revealed nothing; there was evidence that he told his aunt, in the presence of the officers, "Mary, don't tell them nothing. Mary, don't tell them nothing." In *Shelton,* the defendant was arrested at an apartment two miles from the apartment later searched, and defendant refused to aid the officers in gaining access to the apartment. In *Shelton* also the court was careful to point out that the claimed consent could not justify search because search necessarily involved the invasion of the privacy of a joint occupant. No such extreme circumstances are present here. Here appellant's arrest took place within 250 feet of his room. It is true that appellant had a key in his posses-

sion when consent to search was given and that the landlady opened the door with her key. The trial judge found that consent to search had been lawfully extended. In my view the facts here do not require us to say that, as a matter of law, a valid consent to search could not be given.

I would affirm the judgment.