[Crim. No. 15010.   Second Dist., Div. One.   Dec. 16, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. BRUCE COLLOM, Defendant and Appellant.

Roger S. Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jeffrey T. Miller, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from an order denying a motion for a new trial.

In an information filed in Los Angeles on June 6, 1967, Stephen Collom and Bruce Collom were jointly charged with having possessed narcotics on March 15, 1967. It was further charged that Bruce Collom on or about July 1961 was convicted in Los Angeles of a violation of the provisions of section 11715, Health and Safety Code, and that in September 1963 he was convicted in the federal court in Texas of a crime involving narcotics (receiving and transporting) and that he served a term of imprisonment therefor in a federal prison. He pleaded not guilty and denied the charges with reference to the prior convictions. The clerk's transcript recites: "By stipulation of all counsel and the defendant(s) personally, the cause is submitted on the testimony contained in the transcript of the proceedings had at the preliminary hearing, subject to this Court's rulings, with each side reserving the right to offer additional evidence, and all stipulations entered into at the preliminary hearing be deemed entered into in these proceedings.

"It is further stipulated that any—exhibits received at the preliminary hearing are deemed received in evidence in these proceedings, subject to this Court's ruling.

"People's Exhibit (transcript of the proceedings had at the preliminary hearing) admitted in evidence by reference. The court states that it has read and considered the transcript of the preliminary hearing. S Collom: Defendant personally and all counsel waive jury trial on issue of alleged prior felony conviction. B. Collom: Defendant personally and all counsel waives jury trial on issue of allged [sic] priors. Each: Motion of defendant continued to November 6, 1967 at 9:00 am in Department 116 for further proceedings. S Collom: Bail. B Collom: Remanded."

After additional testimony was introduced by each side the judge found each defendant guilty as charged. Stephen indicated that he desired to be committed to a narcotics treatment center for help. A probation officer's report was ordered and was submitted. The court made no finding with reference to the charged prior convictions although the record is clear that defendant Bruce Collom was so convicted as charged. Bruce

himself testified that he had been convicted in 1961 of uttering a forged instrument for narcotics. A motion for a new trial was argued and denied. It then appeared to the court that Bruce was addicted or by reason of repeated use of narcotics was in imminent danger of becoming addicted. It also appeared that Bruce in two other cases had been ''certified to Department 95.'' The judge announced in effect that he would be surprised if those having to do with the narcotics rehabilitation center program kept Bruce but that he was ''willing to go along as long as everybody else has.'' The judge then announced that he would make no ''determination as to priors'' and directed that a petition be filed pursuant to section 3051 of the Welfare and Institutions Code to determine whether Bruce was addicted to narcotic drug use. The probation report which the judge had before him at the time of making the order recites in part that Bruce had been using heroin for seven years, that he had been committed in 1963 to the Public Health Service Hospital, Fort Worth, Texas; that in 1965 he was released therefrom and immediately resumed the use of heroin; that Bruce had been a constant source of trouble throughout the years. The probation officer suggested that the prognosis should be guarded but that one last attempt should be made to salvage something of Bruce. Bruce was found to be an addict, criminal proceedings were suspended and a timely notice of appeal from the order denying the motion for a new trial was filed.

A résumé of some of the facts is as follows: at about 10 a.m. of March 15, 1967, Officers Najera and Black were on duty in a marked police car in the vicinity of Portola and Huntington Drive. The officers observed a parked black Mercury station wagon containing four persons. The Collom brothers left the parked vehicle, walked westward on Huntington Drive, turned around and walked eastward past the parked vehicle. The two Colloms stopped and Arthur Hitch approached them. Najera had known Hitch for several years and knew him to be a person who had been selling heroin on the street and a user himself. Najera had 20 years of experience on the Los Angeles Police Department and a majority of his arrests had been for narcotics violations. Najera saw Hitch hand Stephen Collom an object and saw Bruce Collom hand something to Hitch which appeared to be money. At this time and occasion the heads of the Colloms and Hitch were turned toward Najera when the latter either pointed toward Najera or waved in the direction of Najera. Najera was in a marked police car and in uniform. Immediately thereupon all three of the men who had

been engaged in the transaction which had been observed started running. Najera attempted to get to the men as soon as possible and drove the police car past the parked vehicle to an alley. Najera saw the Colloms running across the alley. The officer drove to the next street and again saw the Colloms running until they got to a corner where they started walking. Najera told Bruce and his brother to "hold it" and asked their names. Najera noticed that Stephen had a rather large balloon in his mouth and "It seemed he was trying to swallow it and he would choke on it and then it would come out and almost out of his mouth." At this point Najera thought that the object in Stephen's mouth was heroin wrapped in a balloon and both of the Colloms were handcuffed and taken back to the parked vehicle from which they had exited earlier. Officer Black was there, having gotten out of the police car to cover the two men in the parked car. Najera asked Stephen, "What is that in your mouth?" Then followed a scuffle and Bruce struck Najera and knocked him into Stephen. The balloon came out of Stephen's mouth and was caught by Najera as he, Najera, fell to the ground. One of the Collom brothers was on top of Najera. The brothers were arrested, told of their constitutional rights and they received some medical assistance. Each of the brothers had puncture marks on his arms; some of the marks on Bruce were still fresh and with scabs.

The testimony of defendants was that Bruce had hit Najera but that the blow was not "on purpose" and that after the scuffle the brothers were struck by the officers with "saps." Each of the two persons who had remained in the parked vehicle testified for defendants. Each of the witnesses, as did Bruce, admitted to prior felony convictions.

Appellant now asserts that he should have been permitted to represent himself, that the heroin should not have been received into evidence for there was no reason temporarily to detain appellant, that it was error to refuse to suppress the evidence because it was obtained by brutal means and that the police used untested, unreliable informants with reference to their information concerning Hitch.

It is true that Judge Klein of the municipal court in answer to appellant's statement, "I would like to conduct my own defense" said: "Sorry, sir, we cannot allow you to do that. This is a felony matter—" The appellant said that he thought he had had "sufficient experience and knowledge to do so." He said: "I have conducted myself in other court

trials, . . ." The judge upon ascertaining that appellant was "not a lawyer," that he had a high school education and "two years college" said, "the motion will be denied." The court stated, "the Appellate Courts say you are not competent to represent yourself in felony matters. So, I really don't have a lot of discretion in the matter." The judge then appointed the public defender to represent appellant and sent the matter to another division of the court. Judge Jewell in the division to which the cause was referred heard appellant state that he wished to represent himself and that he felt experienced in the matter. The judge then said, "I will follow Judge Klein's ruling, if she went into it, and the Public Defender will continue to represent you. I will deny your request on the ground that you are not qualified and Judge Klein has so ruled on your request heretofore." The preliminary examination then proceeded with counsel for appellant properly and extensively examining the witnesses and presenting the law to the court.

At the trial of the cause in the superior court appellant was represented by private counsel of his own choosing. Not one word was said in the trial court by appellant or his counsel of any desire to represent himself and the matter was submitted upon the stipulation and the testimony of appellant's witnesses and himself. In other words, appellant adopted the preliminary hearing proceedings without exception. The trial judge undoubtedly knew the law with reference to a defendant's representing himself and had appellant asked to represent himself the trial judge would have conducted a proper hearing to ascertain appellant's capacity in this connection and would have ruled accordingly. There was in our opinion no error under the circumstances but if there was error it was invited by appellant himself. Certainly counsel was not forced upon appellant for he engaged an attorney of his own choice. In short there was no insistence by appellant that he be permitted to represent himself in the trial court—the exact opposite appears to be the fact.

■ The detention of appellant by Officer Najera in the first instance was perfectly proper under the circumstances. Without extending the facts further, suffice it to say that Najera saw Hitch, a person known to be a narcotics user and pusher, engage in a transaction with the two brothers, all of whom ran when their attention was drawn to the police during the transaction. It was common sense for the officer to insist upon talking with them under the circumstances. (See

*People* v. *Hilliard,* 221 Cal.App.2d 719 [34 Cal.Rptr. 809]; *People* v. *Mora,* 232 Cal.App.2d 400 [42 Cal.Rptr. 725]; *People* v. *Mickelson,* 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Henze,* 253 Cal.App.2d 986 [61 Cal.Rptr. 545].)

The arrest was with probable cause. Furtive and suspicious conduct contribute to probable cause and here. there was the utmost furtive action associated with and immediately following a transaction with a person known to be engaged in the narcotics traffic. (See *People* v. *Rosemont,* 221 Cal.App.2d 500, 502 [34 Cal.Rptr. 667]; *People* v. *Barquera,* 207 Cal.App. 2d 725, 728 [24 Cal.Rptr. 675]; *People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564]; *People* v. *Currier,* 232 Cal.App.2d 103, 107 [42 Cal.Rptr. 562].)

The contraband in this instance was not secured by any brutal tactics. It is a fact that the appellant, an admitted ex-convict and two of his witnesses, also admited ex-convicts, testified differently from the officers. The judge believed the officers as to how the events occurred and not surprisingly disbelieved the appellant and his witnesses.

The evidence in this case is overwhelmingly in favor of the judgment. We have, pursuant to rule 12(a) of the Rules on Appeal, called for and viewed the original proceedings which were before the court at the time the order denying the motion for a new trial was made. There is nothing in the record which persuades us that the order should be reversed.

The order appealed from is affirmed.

Wood, P. J., and Lillie, J., concurred.