[Crim. No. 4275.   First Dist., Div. Two.   Oct. 31, 1963.]

## THE PEOPLE, Plaintiff and Respondent, v. RAYMOND HILLIARD, Defendant and Appellant.

Benjamin M. Davis and George Franklyn Duke for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Barry L. Bunshoft, Deputy Attorneys General, for Plaintiff and Respondent.

TAYLOR, J.—Appellant, Raymond Hilliard, was charged by information with possession of a deadly weapon by an ex-felon in violation of section 12021 of the Penal Code and three prior convictions. Appellant admitted the three prior felony convictions. On this appeal from the judgment rendered on the jury verdict finding him guilty as charged, he contends that the evidence on which the conviction is based was erroneously admitted as it was the result of an unlawful search and seizure and that his alleged confession was likewise erroneously admitted. There is no merit in either of these contentions.

Viewing the record most favorably to the judgment, as we must, the facts are as follows: About 2:30 a.m. on May 19, 1962, Officers Tyree and Eden of the San Francisco Police Department, were in uniform walking west on the south side of Ellis Street in the block between Fillmore and Steiner Streets. As they stopped to talk to someone in front of the Day and Night Cafe at 1611 Ellis Street, they saw the appellant. The appellant was talking to two men in front of 1641 Ellis Street. The officers recognized the appellant from previous meetings and began walking toward him. There was nothing unusual about the appellant's conduct or appearance.

As soon as the officers approached him, the appellant began to walk away. He walked about 30 feet and looked back at the officers and then began to run. He ran west on Ellis Street, then south on Steiner Street, and ducked into a recessed area in front of a building out of sight of the pursuing officers for about three to four seconds. The officers saw the appellant again as he left the recessed area and ran south on Steiner Street. The officers were about 10 to 15 feet behind the appellant and ordered him to halt, as they wanted to talk

to him. The appellant slowed down and the officers caught up with him about 10 to 15 feet from the recessed area.

The officers did not question the appellant at that time but returned to the recessed area. Almost immediately, the officers found a pistol under some paper and debris. Although the recessed area was dirty and littered with debris, the pistol was clean and free of rust and warm to the touch despite the coldness of the night. After the appellant denied any knowledge or ownership of the pistol, the officers placed him under arrest and telephoned for the police wagon. While waiting for the wagon to arrive, the officers turned their backs on the appellant. The appellant escaped for a few moments and hid underneath an automobile in a parking lot on Ellis Street. Subsequently, the appellant was removed to the police station and booked on suspicion of violating section 12021 of the Penal Code.

Two days later, about 10:30 a.m. on May 21, 1962, the appellant voluntarily gave a statement to Inspector Shelley in the city prison as follows: On the evening of May 18, appellant was in the Rattler's Club on Ellis Street and got involved in an argument with two men and a woman. Fearing an assault, the appellant stepped into a back room and obtained a pistol. He then returned carrying the pistol and walked out of the club. The would-be assailants followed him outside and continued to follow him as he walked west on Ellis Street and turned the corner of Steiner. Knowing that as a paroled felon he should not be carrying a weapon, he disposed of the pistol by concealing it under some papers in the recessed area on Steiner Street near the corner of Ellis.

At the trial, appellant gave conflicting testimony concerning the argument at the Rattler's Club. He also testified he thought he was running away from his would-be assailants but stopped as soon as he realized he was being chased by police officers. He denied ducking into the recessed area on Steiner Street as well as any knowledge or possession of the pistol. He also stated that the officers had searched the recessed area for about 25 minutes before finding the weapon. Appellant admitted giving a statement to Officer Shelley but denied saying anything about the pistol.

The first contention on appeal is that the pistol was obtained as the result of the illegal acts of the officers, and therefore should not have been admitted by the trial court. Appellant contends that he was arrested before the pistol was found and the arrest was therefore unlawful, as the officers

had no reasonable cause to believe that he had committed a felony. There is no merit in this contention.

The courts of this state consistently have adhered to the proposition that a police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary in the discharge of his duties. The interrogation procedure does not constitute an arrest even though the person interrogated may be detained momentarily and the existence of facts constituting probable cause to justify an arrest is not a condition precedent to such an investigation (*People* v. *Alcala*, 204 Cal.App.2d 15, 19 [22 Cal.Rptr. 31]). Thus, the propriety of the officers' stopping the appellant for interrogation is completely separate from the issue of arrest and search (*People* v. *Ellsworth*, 190 Cal.App.2d 844 [12 Cal.Rptr. 433]; *People* v. *Gale*, 46 Cal.2d 253 [294 P.2d 13]). Our Supreme Court recently said in *People* v. *Mickelson*, 59 Cal.2d 448 at page 452 [30 Cal.Rptr. 18, 380 P.2d 658]: "We do not believe that our rule permitting temporary detention for questioning conflicts with the Fourth Amendment. It strikes a balance between a person's interest in immunity from police interference and the community's interest in law enforcement. It wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified. (See Barrett, *Personal Rights, Property Rights, and The Fourth Amendment*, 1960 Sup.Ct. Rev. 46, 65-66, 69-70.)"

Each case must be judged in the light of the factual situation presented to the officer. The reasonableness of the officer's decision to make an investigation is determined in the light of the facts and circumstances as they appeared to him at the time he was required to act (*People* v. *Evans*, 175 Cal.App.2d 274, 276 [345 P.2d 947]; *People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Simon*, 45 Cal.2d 645 [290 P.2d 531]). In the instant case, the officers saw the appellant at 2:30 a.m. talking to some people on the street and recognized him. When he walked away from them and then began to run for no apparent reason and ducked into the recessed area, the officers had reasonable grounds to interrogate the appellant and conduct an investigation. From the subsequent discovery of the pistol in the recessed area which the appellant had just left, they could reasonably

infer that the appellant had been carrying the pistol and fled from them because he had been carrying a concealed weapon. Thus, they had probable cause to believe that the appellant had committed a felony, and were justified in arresting him without a warrant (*People* v. *Porter*, 196 Cal.App.2d 684, 686 [16 Cal.Rptr. 886]).

Appellant's next contention is that the search of the recessed area on the street and the seizure of the pistol was an illegal search and seizure. However, the appellant was not in possession of the property upon which the pistol was found as the undisputed evidence discloses that the search was made in a recessed area in a public street. It is well established that the protection afforded by the Fourth Amendment of the United States Constitution does not apply in such a situation (*People* v. *Reed*, 210 Cal.App.2d 80 [26 Cal.Rptr. 428]; *People* v. *Montes*, 146 Cal.App.2d 530, 533 [303 P.2d 1064]; *Hester* v. *United States*, 265 U.S. 57 [4 S.Ct. 445, 68 L.Ed. 898]). Thus, *Gascon* v. *Superior Court*, 169 Cal.App.2d 356 [337 P.2d 201], which involved an unlawful search of the person of the defendant therein is not relevant here.

The second contention on appeal is that the trial court erred in admitting appellant's statement to Inspector Shelley as no corpus delicti had been established. The elements of the offense here involved are (1) conviction of a felony and (2) ownership or possession of a firearm (*People* v. *DePrima*, 172 Cal.App.2d 109 [341 P.2d 840]). Appellant erroneously contends that there was no proof of the second element. We think that under the circumstances of this case, it was reasonably to be inferred that the appellant had been in possession of the pistol until he disposed of it. Thus, the trial court properly ruled that the corpus delicti had been proven prior to admitting appellant's statement.

Appellant also argues that his statement to Inspector Shelley was the result of an unlawful detention. The record indicates that the statement was obtained about 10:30 a.m. on Monday, May 21, 1962, some 56 hours after appellant's arrest at about 2:30 a.m. on Saturday, May 19. The record does not indicate whether or not appellant had been brought before a magistrate before giving his statement. Section 825 of the Penal Code provides that a defendant must in all cases be taken before a magistrate without unnecessary delay and in any event within two days after his arrest, excluding Sundays and holidays. Thus, appellant's state-

ment to Inspector Shelley was made well within the period of time allowed by section 825. Even assuming arguendo that appellant's detention was unlawful because of the length of time involved, there was no showing that the illegal detention was responsible for his admission (*People* v. *Hall*, 186 Cal. App.2d 388 [8 Cal.Rptr. 760]).

Judgment affirmed.

Shoemaker, P. J., and Agee, J., concurred.