[Crim. No. 27497. Second Dist., Div. Five. Oct. 7, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN EDWARD HERRON, Defendant and Appellant.

## COUNSEL

John Stocker, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Kent L. Richland and Abram Weisbrot, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—Defendant was charged with having violated the dangerous weapons control law, Penal Code section 12020. After a not guilty plea was entered, the right to a jury trial was waived. Defendant was found guilty as charged. Probation was denied and commitment to the California Youth Authority was ordered.

On the night of December 15, 1974, defendant, along with others, was seen on the crest of a mound on a residential lot. At one time the lot had apparently been built upon, but at the time here involved there remained only foundations. The officers involved had been notified of a disturbance at the location, and on arrival, heard the sound of a gunshot. They went up to the top of the mound, announced their presence, and there observed defendant with his hands in the air, over his head, as though he was throwing something behind him. The sound of something striking the ground was heard. No article was specifically observed to have been thrown. Upon investigation, the sawed-off 410 shotgun was found some 25 to 30 feet from defendant and in the direction of the throw. The weapon was dry and loaded; it was subsequently determined to be operable. The area in which the gun was located was covered with mashed-down, long grass, and was wet with dew. Also found in the same area was a paint-roller cover which had dried paint covering it, but was wet to the touch.

The defense consisted of testimony of a witness to the arrest who testified that he never saw defendant throw anything and never saw the shotgun before, that no shot was fired, but there was a noise which could have been an automobile backfire, no one had any weapons, defendant had his hands in his pockets at all times, and none of the people present threw anything.

■ The evidence was adequate to sustain the conviction. The case of *People* v. *Hilliard,* 221 Cal.App.2d 719 [34 Cal.Rptr. 809], is quite similar to the instant case, and there, it was found that the circumstantial evidence adequately supported the charge of possession of contraband. (*Id.,* at p. 724.) The same rationale is applicable in the instant case.

■ There is no merit to the contention that the probation and sentence hearing was unfair and prejudicial. Reference to arrests which had not resulted in convictions was contained in the probation report. We agree with defendant that such reference standing alone may be prejudicial, but in the instant case there was no question but that the arrests were not followed by convictions, hence the judge was not misled. In addition, the established record of juvenile court contacts with

defendant, his having been found to have committed the many offenses shown, and his gang association, clearly obviated any suggestion of prejudice which might have arisen by the reference to arrests which had not resulted in convictions. The instant case is readily distinguishable from *People* v. *Calloway,* 37 Cal.App.3d 905 [112 Cal.Rptr. 745], relied upon by defendant. There, the bare police-contact listings without showing dispositions or other major informative facts constituted error. The information in the instant report is not so limited. (See *People* v. *Peterson,* 9 Cal.3d 717, 725-726 [108 Cal.Rptr. 835, 511 P.2d 1187].)

Since the filing of briefs in this case, the Supreme Court has handed down its decision in *People* v. *Olivas,* 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375], holding that a person between the ages of 16 and 21 who was tried as an adult for a misdemeanor assault (Pen. Code, § 240) and thereafter committed to the California Youth Authority cannot be held (incarcerated) for a period in excess of the maximum jail term, i.e., six months, in that case. ■ Here, the defendant at the time of the offense and trial was 18 years of age (the judge made a finding in accordance with Welf. & Inst. Code, § 1731, to that effect) and was tried as an adult. The charge, however, was for possession of a sawed-off shotgun, a potential felony.[1] Defendant argues that a one year maximum incarceration follows from the commitment to the California Youth Authority because such commitment consigns the offense to the misde-. meanor category of alternatives available under the section.[2] (See *People* v. *Navarro,* 7 Cal.3d 248, 271 [102 Cal.Rptr. 137, 497 P.2d 481], and *People* v. *Hannon,* 5 Cal.3d 330 [96 Cal.Rptr. 35, 486 P.2d 1235].)[3] We very much doubt that the trial judge had in mind limiting defendant's incarceration to one year when he issued the order of commitment, but this comment is equally applicable to the trial judge who pronounced sentence in *Olivas.* Since sentencing requires the exercise of judicial discretion, it seems incongruous that after a trial judge exercises sentencing discretion under a given set of rules, the rules may be changed, nullifying the sentence analysis, though this is what defendant argues. In analyzing the issue posed, we necessarily start with the statutes

[1]Penal Code section 12020 is an optional sentence statute, i.e., sentence may be imposed in the form of punishment for either a misdemeanor or a felony: "Any [violator] . . . shall be punishable by imprisonment in the county jail not exceeding one year or in a state prison for not less than one year nor more than three years."

[2]Section 1731.5, Welfare and Institutions Code, states: ". . . a court may commit to the authority any person convicted of a public offense who . . . (a) [i]s found to be less than 21 years of age at the time of apprehension."

[3]The *Navarro* case also involved a "wobbler," i.e., a crime in which the sentence determines whether it be a misdemeanor or a felony.

involved. Section 16 of the Penal Code classifies crimes and public offenses into three catagories: (1) Felonies (2) Misdemeanors and (3) Infractions. Penal Code, section 17, subdivision (a), defines a felony as "a crime which is punishable with death or by imprisonment in the state prison."

By direction of that same section, "Every other crime or public offense is a misdemeanor except those offenses which are classified as infractions."

Subdivision (b) of section 17 defines types of misdemeanors: "When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: (1) After a judgment imposing a punishment other than imprisonment in the state prison; (2) When the court commits the defendant to the Youth Authority."

We discern from these statutes that there is more than one type of misdemeanor; i.e., jail time (other than in a state prison) and Youth Authority commitment. Seeking to spring solely from that portion of the punishment portion of section 12020 of the Penal Code limiting a county jail sentence to one year, defendant would have us declare that all misdemeanors have a maximum incarceration time of one year, including time in the Youth Authority; the law provides otherwise. Defendant has seized on the phrase "misdemeants" as used in *Olivas,* to bootstrap himself into the concept that commitment to the Youth Authority shall be "unconditionally a misdemeanor, for all purposes thereafter." (*People v. Navarro,* 7 Cal.3d 248, 271 [102 Cal.Rptr. 137, 497 P.2d 481].) He also mistakenly relies upon *Olivas, supra,* as dictating the result he desires. In that case the maximum incarceration provided for the crime there involved (Pen. Code, § 240) was six months. The sole place of incarceration was designated as the county jail. (Pen. Code, § 241.)[4]

In the case before us, however, the maximum incarceration, had defendant been sentenced as a felon, would have been three years in the state prison. Had defendant been sentenced to the county jail (an

---

[4]Penal Code section 18a, states: "Except in cases where a different *minimum* punishment is prescribed . . . for every offense declared to be a felony . . . the *minimum* imprisonment shall be imprisonment in any of the state prisons for *not less* than six months."

alternative provided for in § 12020), the maximum would have been one year.[5] But defendant was not sentenced to a term in the county jail and the maximum incarceration as a committee to the Youth Authority is not limited by the restriction in sections 12020 and 19a of the Penal Code.[6]

We are, therefore, only confronted by the denial of the equal protection of the law issue, as recognized in *Olivas,* when defendant is threatened with an extension of incarceration beyond the maximum to which he could be subjected under section 12020 of the Penal Code, i.e., three years.[7] As stated in *Olivas* on pages 240-241: "In order to understand how section 1731.5 [Welf. & Inst. Code] results in a denial of equal protection to youthful misdemeanants such as defendant, it is necessary to compare the maximum period of incarceration which may be imposed under the Penal Code with the period permitted upon commitment to the Youth Authority."[8]

In considering the issue before us it is necessary to have in mind the purpose and direction of the Youth Authority; however, this is fully set forth in *In re Herrera,* 23 Cal.2d 206, 213 [143 P.2d 345]. The desire to segregate the seasoned prisoner from the impressionable transgressor is likewise patently clear. ■ The reasons stated (and there are many others) justify the distinction between the three incarceration sentences

[5]Section 19a of the Penal Code provides that maximum confinement in a county jail is one year. Section 12020 of the Penal Code also provides that one year in the county jail is the maximum confinement which may be ordered in that facility.

[6]We do not set forth the maximum terms of commitment in the Youth Authority for they are fully analyzed in *Olivas* at page 241. As we will conclude, however, the maximum incarceration in the instant case in light of *Olivas* (as distinguished from Welf. & Inst. Code provisions) is three years.

[7]The language in *Olivas* on page 255 must be read in context; in that case, as we have noted, the court was dealing with a crime which provided solely for a county jail term if jail time was ordered: "If the equal protection clause can be overridden by the necessity of some 'minimum period of confinement for rehabilitation' which is longer than the appropriate misdemeanor jail term as is urged by the People, then what other constitutional provision would bar a statute permitting the lifelong confinement of marginally incorrigible misdemeanant shoplifters, for example, under the beneficent guise of rehabilitative treatment?" (Fn. omitted.)

[8]"The inequity of this situation is further highlighted when one considers that if another adult 21 years-of-age had taken part in the same assault which resulted in defendant's conviction, had been similarly convicted, and had then been sentenced to the maximum period of incarceration permitted in his case, that person would have been freed many months ago. Moreover, the instant case is not some isolated example of unequal treatment which has resulted only in defendant's case. Even when a youthful offender is convicted of a misdemeanor with a maximum permissible jail term of one-year, commitment to the Youth Authority results, at the very least, in a doubling of the possible period of incarceration due to the two-year provision of section 1770."

prescribed in the Penal Code: sentence to state prison, sentence to the county jail, and commitment to the Youth Authority. In each instance the term of incarceration may vary one from the other and merely because the term "misdemeanor" designates both county jail and Youth Authority incarceration, one is not limited by the other. It is the maximum term of incarceration authorized by the penal statute violated which limits penal control as it relates to both county jail and Youth Authority. (*Olivas* at p. 239.) ■■■ In the instant case that maximum incarceration period is three years.

We conclude that neither *Olivas* nor any of its predecessors dealing with this topic have held that simply because a Youth Authority commitment is to be treated in all respects thereafter as a misdemeanor, the misdemeanor jail term maximum supersedes *the maximum term to which defendant might have been sentenced* had a felony sentence been imposed. We note also that a conclusion contrary to that which we have reached would negate the right of use of many state and local facilities now available to the director, including portions of the state prison system.[9]

We note also that here there was a full discussion at time of sentence regarding prison sentence vis-a-vis a county jail term or probation or Youth Authority commitment.[10]

By caveat, it must be understood that we do not here decide the effect if any of *Olivas* in the case of a defendant between the ages of 16 and 18

---

[9]Section 1753 of the Welfare and Institutions Code states: "For the purpose of carrying out its duties, the Authority and the director are authorized to make use of law enforcement, detention, probation, parole, medical, educational, correctional, segregative and other facilities, institutions and agencies, whether public or private, within the State. The director may enter into agreements with the appropriate public officials for separate care and special treatment in existing institutions of persons subject to the control of the Authority."

Section 1755.5 of the Welfare and Institutions Code states: "Notwithstanding any provisions of Section 506 or Section 510, the Youth Authority may transfer to and cause to be confined in the Medical Facility, the Correctional Training Facility at Soledad, the California Institution for Women at Corona, the California Rehabilitation Center, the Medical Correctional Institution, or the California Institution for Men under the jurisdiction of the Department of Corrections for general study, diagnosis, and treatment, or any of them, any person over the age of 18 years who is subject to the custody, control, and discipline of the Youth Authority; and the Director of Corrections may receive and keep in any of the said institutions any person so transferred thereto by the Youth Authority, with the same powers as if the person had been placed therein or transferred thereto pursuant to the provisions of the Penal Code."

[10]The judge made a specific finding that defendant was 18 years of age at the time of the offense. The record reads: "THE COURT: Any legal cause why sentence should not

years.[11] A court faced with a sentencing problem in such case where the "crime" is of the "wobbler" type[12] (or even if it is not a "wobbler" but rather a straight felony less than capital or life imprisonment) *has no alternative but to commit to the Youth Authority* for he cannot sentence such person to the state prison (unless, of course, a county jail sentence is deemed appropriate and permissible). (Welf. & Inst. Code, § 707.2, *supra*; *In re Stanley, ante,* p. 71 [131 Cal.Rptr. 608].)

 While we have condensed the contentions of defendant, we have considered each facet of the issues on appeal as well · as each of the cases cited, and find there was no error.[13] However, it remains necessary, and we do direct that the judgment be modified to provide that defendant's commitment to the California Youth Authority be terminated at a time not in excess of three years from time of sentence.

now be pronounced? Mr. Nierenberg [defense attorney]: None. THE COURT: The Court has read and considered the report of the probation officer. Mr. Nierenberg: I would like to present to the Court, there would be a motion for a new trial to reduce this to a misdemeanor rather than a felony under the Penal Code. THE COURT: You don't have to make a motion for a new trial for that. Mr. Nierenberg: No. In lieu thereof in the interests of justice I would ask that the matter be treated as a misdemeanor. . . . Mrs. Goodson [prosecutor]: I think if he goes to YA it will be treated as a misdemeanor. . . . Mr. Nierenberg: . . . . I'm asking that my client not be sent to the CYA, that the matter be treated as a misdemeanor. If the Court is going to impose any sentence, either place him on probation as an adult or in the alternative County time to impress upon him the idea that he cannot have a weapon. . . . THE COURT: Probation is denied. The defenant is comitted to the California Youth Authority."

[11]Welfare and Institutions Code section 707.2 states: "Except as provided in Sections 1731.5 and 1737.1, no minor who was under the age of 18 years when he committed any criminal offense, and who has been found not a fit and proper subject to be dealt with under the juvenile court law pursuant to Section 707, shall be sentenced to the state prison, except upon petition filed pursuant to Article 5 (commencing with Section 1780) of Division 2.5. Of those persons eligible for commitment to the Youth Authority, prior to sentence the court may remand such persons to the custody of the California Youth Authority not to exceed 90 days for the purpose of evaluation and report. [¶] With the exception of past or present wards of the authority, no person shall be returned to the court by the authority unless he has been remanded to the Youth Authority for diagnosis and report, and personally evaluated."

[12]Penal Code section 17, subdivisions (a) and (b)(2) states:

"(a) A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime or public offense is a misdemeanor except those offenses that are classified as infractions.

"(b) When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances.

" . . . . . . . . . . . . . . . . .

"(2) When the court commits the defendant to the Youth Authority."

[13]Included in this comment is an issue raised by way of supplemental briefing. This additional contention argues that the denial of probation was without explanation or statement of reason. (See *In re Podesto,* 15 Cal.3d 921 [127 Cal.Rptr. 97, 544 P.2d 1297].)

As so modified, the judgment is affirmed.

Ashby, J., concurred.

**KAUS, P. J.,** Concurring and Dissenting.—*People* v. *Olivas,* 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375] raises three specific questions. *One*: whether, as defendant contends, the duration of a Youth Authority commitment after conviction of an alternative felony-misdemeanor, is necessarily limited to the maximum jail time which could be imposed on an adult, if the sentencing court determined to treat such adult as a misdemeanant. *Two*: if the answer to this question is "no," how we should dispose of this particular case, having in mind that when the trial court sentenced defendant it was ignorant of the equal protection problem posed by *Olivas*. *Three*: how *Olivas* affects youthful defendants convicted of felony-misdemeanors and sentenced by trial courts aware of *Olivas*.

As will be seen, I agree with the majority that the answer to the first question is "no." I disagree, however, with respect to its disposition of this particular case. Finally, since this case obviously does not involve a court aware of *Olivas,* I find it unnecessary to answer the third question.

I

I do not agree with defendant that *Olivas* inevitably puts a misdemeanor "lid" on the maximum Youth Authority confinement of a defendant found guilty of having committed a felony-misdemeanor.

*Olivas* merely holds, on equal protection grounds, that in a straight misdemeanor case where the maximum incarceration that could be suffered by an adult is six months in jail, Youth Authority incarceration

---

Under the circumstances of this case, the prior record of defendant and his "gang" involvement was exposed in the probation report and in argument at time of sentence. It appears to us unnecessary for the judge to reiterate those facts (in addition to his acknowledgement of having read and considered the report) as a prologue to the statement of denial of probation. We do not say that in a close case an expression of reasoning would not give greater meaning to appellate review but since we see no harm having here resulted from the abbreviated statement, there is no sense in returning the case for an unnecessary resentencing act.

cannot exceed the adult maximum. This equal protection argument is inapplicable in this case since section 12020 of the Penal Code provides for punishment "by imprisonment in the county jail not exceeding one year or in a state prison for not less than one year nor more than three years." Obviously an adult could have been sent to prison for three years. Therefore, if defendant's Youth Authority commitment cannot exceed one year, the reason must be found in a California statute, rather than in the equal protection clause of the Fourteenth Amendment.

Penal Code section 17, subdivisions (b) (2), provides that "When a crime is punishable . . . by imprisonment in the state prison . . . or imprisonment in the county jail, it is a misdemeanor for all purposes . . . [w]hen the court commits the defendant to the Youth Authority." In different contexts, *People* v. *Hannon,* 5 Cal.3d 330, 340 [96 Cal.Rptr. 35, 486 P.2d 1235], and *People* v. *Navarro,* 7 Cal.3d 248, 265-271 [102 Cal.Rptr. 137, 497 P.2d 481], held that Penal Code section 17, subdivisions (b) (2), means precisely what it says.[1] The question is, however, whether absent a limitation derived from the equal protection clause, a Youth Authority commitment in excess of one year is irreconcilable with the "misdemeanor for all purposes" label.

I agree that it is not. There is no statute which prescribes a maximum Youth Authority confinement of one year for misdemeanants. The only applicable statute is section 1770 of the Welfare and Institutions Code, which provides that persons convicted of misdemeanors and committed to the Youth Authority must be discharged after a "two year period of control or when the person reaches his 23d birthday, whichever occurs later . . . ." Section 19a of the Penal Code does, of course, limit jail confinement for misdemeanants to one year, but absent equal protection leverage, that statute obviously does not apply when the defendant has not been sentenced to jail.

## II

In *Olivas* the statutory maximum of section 1770 was shortened to six months because it was an incontrovertible fact that an adult convicted of

---

[1] *Hannon* held that when a youthful offender, convicted of an alternative felony-misdemeanor, is returned to the community court under section 1737.1 of the Welfare and Institutions Code, he can only be sentenced as a misdemeanant. *Navarro* held that a previous conviction on an alternative felony-misdemeanor which resulted in a Youth Authority commitment, is not a previous felony conviction for the purpose of determining eligibility under the narcotics rehabilitation program.

the same crime could not have been confined for a longer period. The majority is, of course, quite correct in holding that, applying *Olivas* to a violation of section 12020 of the Penal Code, the maximum possible Youth Authority confinement is three years—that being the maximum prison confinement that could be suffered by an adult, if such an adult is sentenced as a felon. This, however, is only the upper limit of confinement which equal protection demands and presupposes that an adult in the defendant's shoes would have been sentenced as a felon.

Manifestly as far as this defendant is concerned we have no such assurance. Not being aware of any equal protection problem, the trial court committed defendant to the Youth Authority after defense counsel had asked that the court "reduce [the offense] to a misdemeanor" and the prosecutrix had announced that a Youth Authority commitment would be "treated as a misdemeanor"—an obvious reference to section 17, subdivision (b)(2) of the Penal Code. In this fashion the trial court was caused to leapfrog the question which *Olivas* makes relevant by way of the equal protection clause: what would have been defendant's maximum confinement had he been an adult?

### III

As I said at the outset, I do not think that this case calls for a holding or declaration with respect to the maximum Youth Authority confinement of juveniles committed to the Youth Authority by a trial court fully cognizant of the impact of the equal protection clause. Personally I should have thought that in such a case a juvenile is entitled to a finding how the court would have handled an adult defendant, but that is neither here nor there. As far as this defendant is concerned, he is clearly entitled to a reconsideration of the sentence in the light of *Olivas.*

I therefore dissent from the disposition of the case.

A petition for a rehearing was denied November 1, 1976, and the opinion was modified. to read as printed above. Kaus, P. J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied December 16, 1976.