[Crim. No. 29999. Second Dist., Div. Five. Dec. 23, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD LEWIS PHILLIPS, Defendant and Appellant.

COUNSEL

Harvey A. Sniderman, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Lawrence P. Scherb II and Andrew D. Amerson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ASHBY, J.**—After a jury trial appellant was convicted of sale of heroin (Health & Saf. Code, § 11352) and was sentenced to state prison.

In March 1975, Debra Foster, who had used heroin in the past in appellant's presence, acted for the San Luis Obispo Sheriff's office as an undercover purchaser of heroin from appellant, in return for the dropping of forgery charges against her. After being searched and equipped with a transmitter, she went to appellant's home in Cayucas at 10 a.m. on March 19, 1975. Her conversation with appellant was evidenced at trial by Debra's testimony, by the testimony of Deputy Sheriff Hobson who listened to the conversation with a receiving device outside the residence, and by a tape of the conversation which was played for the jury.

Debra asked appellant if he had any stuff and he said yes. She said she had $100 and asked if that would buy five bags, to which he replied yes. Appellant went to another room and brought back five balloons containing heroin and showed them to her. Debra gave appellant $100 which had been supplied to her by Deputy Sheriff Hobson and appellant handed over the five balloons.

Debra then asked appellant if he would want her to start dealing for him. Appellant said that if she could go over to Paso Robles and sell $200 worth every two to three days, he would supply her at $15 per bag. Debra said that she thought she could, because she knew a lot of people in Paso Robles and Atascadero. Appellant indicated that if she could sell such quantities they could make a deal. Debra said she had lost appellant's phone number and asked for it, but he told her to look it up in the phone book rather than writing it down and carrying it around with her. Debra said she would call back that night or be back the next day if she was able to sell the heroin she just bought. Appellant said O.K. Debra left, and turned over the five balloons to Deputy Hobson. They were analyzed and found to contain heroin.

Appellant admitted selling the heroin to Debra; his defense was entrapment. He testified that he had been addicted and was using heroin himself. Debra had telephoned him a day or two before this incident and asked him to sell her some, but appellant told her that all he had was his own which he used. Subsequently he ran across her again and she said that she was hurting and would still like to get some. He was asleep when

she came to the house at 10 a.m., and he had injected himself at about 3 a.m. He sold her his last five bags because she kept asking, and he wanted to get rid of her and go back to bed. When she asked appellant if she could deal for him, he did not tell her yes or no, but suggested that she would have to sell a lot for it to be worth his while. He named a high price, figuring that she would not be able to do it and would not come back.

On cross-examination during the prosecution's case-in-chief, Debra testified she telephoned appellant a day or two prior to the sale, but she did not recall telling appellant that she was hurting or that she was sick; did not remember appellant saying that he had no heroin to sell; and did not remember appellant saying that he had only a personal stash and did not want to sell. Deputy Hobson was present when Debra telephoned appellant. He did not instruct Debra to say that she was sick and he did not recall her saying that she was sick. She did nothing more than find out if appellant had any heroin. Deputy Hobson did not receive any indication during this call that appellant was unwilling to sell to Debra.

## ENTRAPMENT

■ Appellant's first contention is that he was entrapped. Appellant's testimony on the entrapment issue was contradicted by the prosecution evidence which showed that appellant was very ready to sell and that Debra used no more than the ordinary persuasion incident to a sale between a willing buyer and a willing seller. (*People* v. *Gossett,* 20 Cal.App.3d 230, 233 [97 Cal.Rptr. 528]; 1 Witkin, Cal. Crimes (1963) § 181, p. 173.) There was substantial evidence in conflict with appellant's claims that he initially refused Debra and that she repeatedly pursued him with requests and entreaties that she was hurting. The jury was properly instructed on entrapment and resolved against appellant the conflicts in the evidence. ■ The jury's findings on conflicting evidence are binding on appeal. (*People* v. *Moran,* 1 Cal.3d 755, 760 [83 Cal.Rptr. 411, 463 P.2d 763]; *People* v. *Adams,* 21 Cal.App.3d 972, 980-981 [99 Cal.Rptr. 122]; *People* v. *Blackwell,* 45 Cal.App.3d 804, 809 [119 Cal.Rptr. 768]; *People* v. *Strohl,* 57 Cal.App.3d 347, 368-369 [129 Cal.Rptr. 224].)

## SENTENCE

Appellant raises two arguments against his sentence to state prison: (1) that the court abused its discretion and (2) that the probation officer's

report contained references to some prior arrests which had not led to conviction. On our own motion we augmented the record to include the probation officer's report. Under the heading "Prior Criminal Record," the probation officer listed five cases, between 1968 and 1973, in which appellant was convicted but received misdemeanor sentences, including fine or probation. These cases involved weapons possession, receiving stolen property, drunkenness in public, disturbing the peace, and assault with a deadly weapon. In 1974 appellant violated probation on one of these cases and was committed to the California Rehabilitation Center as a narcotic addict. He committed the instant offense while on outpatient status from the CRC. He was originally arrested for the instant offense in March 1975, but the case was dismissed when the informant left the state. In July 1975, however, the CRC referred him back to the court in his prior case as unamenable to treatment based upon the information of his sales activity in this case and other violations of his outpatient status. When the informant reappeared in 1976, appellant was prosecuted on the instant matter. Between September 1975 and his rearrest in May 1976, appellant was living in Las Vegas working for a construction company and apparently committed no new offenses.

In addition to the misdemeanor convictions, the probation officer's report also listed 10 arrests between 1969 and 1974 with indications either of "no disposition shown" or "dismissed for insufficient evidence."

Also recited in that report was the fact that appellant told the probation officer that he possessed the heroin for his own personal use and sold it to the informant because his wife was pressuring him to stop using it and to get the heroin out of the house. He denied he was trafficking. He indicated that he had stopped using heroin in May 1975 but was on methadone in Las Vegas one and a half weeks prior to his rearrest. The probation officer did not believe appellant. It was the probation officer's opinion that at the time he sold the heroin to the informant appellant was in fact trafficking for profit and had every intention of continuing to do so. The probation officer recommended that appellant be sentenced to state prison.

At the sentencing hearing appellant's counsel argued for probation with county jail time, urging that none of appellant's prior convictions was a felony, that the other arrests had not been prosecuted, and that between the time of the sale and his rearrest appellant was not involved in new offenses in Las Vegas.

The court sentenced appellant to state prison, commenting upon a number of factors in its decision. The court considered but rejected the idea of committing appellant to CRC since appellant had been rejected from that program and had committed the instant offense while on outpatient status from the CRC. The court was aware that appellant had not been involved in further trouble during the past year, but it did not feel that factor was "key" where the record in the trial clearly established a sale of heroin and a discussion of further sales with the informant. Noting that the instant offense occurred while appellant was on probation for a prior offense and outpatient status from the CRC, the court felt appellant had abused the leniency which had been shown him in the past. As to appellant's other arrests, the court was aware they did not lead to conviction but stated: "Well, I would comment for the record that Mr. Phillips' prior history would appear to me to have had too much involvement with arrests to be interpreted purely as accidental, that he was at some place and brought to whatever police agency was involved purely because of misfortune."

Appellant was convicted of a serious offense in this case and the evidence was sufficient to justify the probation officer and trial court to believe that appellant was trafficking for profit and was interested in future sales, and to reject appellant's claim that he was involved only in personal use and was merely trying to get rid of the informant. The fact that appellant had avoided further law violations between the sale and the time of sentencing is not controlling. More lenient dispositions in appellant's prior cases did not prevent the instant offense. ▮ Probation is not a right but an act of clemency in the discretion of the trial court. (*People* v. *Label,* 43 Cal.App.3d 766, 776 [119 Cal.Rptr. 522]; *People* v. *Ozene,* 27 Cal.App.3d 905, 915 [104 Cal.Rptr. 170].) ▮ Commitment to the CRC was not appropriate in light of appellant's prior failure there. Appellant has not satisfied the heavy burden of showing that the trial court abused its discretion. (*People* v. *Kingston,* 44 Cal.App.3d 629, 637 [118 Cal.Rptr. 896].)

▮ Appellant next argues that the fact the probation officer's report contained information on appellant's prior arrests which did not lead to convictions was improper and prejudicial and requires a new sentencing hearing. This argument has no merit. ▮ It is not improper for the probation officer to include the defendant's prior arrests in the probation report nor is it improper for the trial court in its sentencing decision to rely in part on arrests not leading to convictions. This was very recently

.reiterated by our Supreme Court in *Loder* v. *Municipal Court,* 17 Cal.3d 859, 867-868 [132 Cal.Rptr. 464, 553 P.2d 624], where the court stated that for purposes of probation consideration after conviction, "the court may properly consider not only current arrests of the defendant giving rise to charges still pending (*People* v. *Escobar* (1953) 122 Cal.App.2d 15, 18 [264 P.2d 571]), but also prior arrests which did not result in conviction (*People* v. *White* (1952) 109 Cal.App.2d 296, 298 [240 P.2d 728], and cases cited; but see *People* v. *Calloway* (1974) 37 Cal.App.3d 905, 908-909 [112 Cal.Rptr. 745] (dictum))."

In *People* v. *Chi Ko Wong,* 18 Cal.3d 698, 719 [135 Cal.Rptr. 392, 557 P.2d 976], the Supreme Court required factual supporting information only for "police contacts *not leading to arrest or* conviction." (Italics added.)

Despite these pronouncements from the Supreme Court, some members of the appellate bar have interpreted *People* v. *Calloway, supra,* to mean that arrests not leading to convictions should not be included in a probation report. *Calloway* does not stand for that proposition. In *Calloway* the defendant's police contacts had resulted in his release pursuant to Penal Code section 849, subdivision (b)(1).[1] Pursuant to Penal Code section 849, subdivision (c), ". . . Thereafter, such arrest shall not be deemed an arrest, but a detention only." The *Calloway* court stated that "[f]undamental fairness dictates such information should not be included in the probation report or considered by the judge unless additional facts are supplied which indicate the applicant was involved in the listed offenses despite the fact he was *not arrested,* charged or convicted of them." (*People* v. *Calloway, supra,* 37 Cal.App.3d at p. 909; italics added.) The court relied on the fact that pursuant to section 849, subdivision (c), the incidents were not to be deemed arrests. (*Id.,* at p. 908.)

In quoting an advisory committee comment to the American Bar Association's Standards for Criminal Justice, the *Calloway* court referred to the danger that if arrests are not clearly labeled as such they might possibly be mistaken by the reader for convictions.[2] The rule is not that it

---

[1]Penal Code section 849, subdivision (b)(1), provides: "(b) Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever: [¶] (1) He is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested."

[2]"The practice of including raw arrest data in a probation report is condemned by the American Bar Association's Standards for Criminal Justice. '. . . the Advisory Committee

is improper to include such data in the probation report, but rather that it should be clearly labeled so that the trial judge will not *mistake* an arrest for a conviction. Subsequent cases have made clear that where arrest data is presented in a manner which is not likely to mislead the judge, there is no error in the court's receiving and considering it. (*People* v. *Chi Ko Wong, supra,* 18 Cal.3d. 698, 719-720 & fn. 17; *People* v. *Herron,* 62 Cal.App.3d 643, 646-647 [133 Cal.Rptr. 287]; *People* v. *Molina,* 74 Cal.App.3d 544, 551 [141 Cal.Rptr. 533]; *In re Michael R.,* 73 Cal.App.3d 327, 335, fn. 5 [140 Cal.Rptr. 716].)

Thus the fact the probation report contains arrest data is no basis for reversal in the absence of evidence in the record that the trial judge was actually misled into mistaking arrests for convictions. (*People* v. *Chi Ko Wong, supra; People* v. *Herron, supra.*) ■ In the instant case there is no evidence the trial judge mistook appellant's arrests for convictions, and appellant's burden of demonstrating error has not been satisfied. In fact, trial counsel specifically pointed out to the court that the arrests had not led to convictions.[3] The trial court's comments also clearly indicate that it did not mistake the arrests for convictions.

■ Even if possible confusion were demonstrated, to justify reversal it must also be shown that the judge materially relied upon such mistaken belief in sentencing the defendant. Numerous cases, including *Calloway* itself, have held that where the sentence was based on other factors any possible confusion of this nature is not prejudicial. (*People* v. *Calloway, supra,* 37 Cal.App.3d 905, 909; *People* v. *Morales,* 49 Cal.App.3d 732, 738 [122 Cal.Rptr. 804]; *People* v. *Herron, supra,* 62 Cal.App.3d 643, 646-647.) The only case which has come to our attention

---

means to include only those charges which have resulted in a conviction. Arrests, juvenile dispositions short of an adjudication, and the like, can be extremely misleading and damaging if presented to the court as part of a section of the report which deals with past convictions. If such items should be included at all—and the Advisory Committee would not provide for their inclusion—at the very least a detailed effort should be undertaken to assure that the reader of the report cannot possibly mistake an arrest for a conviction.' (Standards Relating to Probation (Tent. Draft 1970) p. 37.)" (*People* v. *Calloway, supra,* 37 Cal.App.3d at p. 908.)

[3]In *People* v. *Chi Ko Wong, supra,* 18 Cal.3d at page 721, footnote 18, the court stated: "Should allegations of suspected involvement in other crimes be made without adequate factual support, counsel is free to exploit this weakness at the hearing. '[I]f the staff's submissions include materials which are susceptible to challenge or impeachment, it is precisely the role of counsel to "denigrate" such matter. There is no irrebuttable presumption of accuracy attached to staff reports.' (*Kent* v. *United States, supra,* 383 U.S. 541, 563 [16 L.Ed.2d 84, 98 (86 S.Ct. 1045)].)"

in which a sentencing decision was reversed on appeal because of references to prior arrests in the probation report is *People* v. *Romero*, 68 Cal.App.3d 543, 549-553 [137 Cal.Rptr. 675]. However, there were unique circumstances in that case which clearly demonstrated that the trial court mistook prior arrests for convictions and relied solely on that mistake in its sentencing decision. In that case the defendant was convicted of aiding and abetting a sale of a single balloon of heroin. He requested commitment to the CRC, which the trial court denied on the ground of " 'excessive criminality,' " referring to the defendant's " *'lengthy record.'* " (*Id.,* at p. 549; italics in original.) There were 31 entries in the probation officer's report under "arrest record," but only one-third had resulted in convictions, and these resulted in misdemeanor sentences. Twenty-five of the thirty-one entries involved drugs or alcohol.

Based on the record, the appellate court came to the "inescapable conclusion" that the defendant was addicted and that "[w]ith the exception of the trial court's conclusion of 'excessive criminality,' it would appear that appellant meets every 'suitable' criterion and does not meet any of the 'unsuitable' criterion for a CRC commitment. Given the facts and circumstances herein, we find it difficult to see why the trial court did not invoke [Welfare and Institutions Code] section 3051." (*Id.,* at p. 552.)

Thus the trial court in *Romero*, in referring to the defendant's " 'lengthy record' " and sentencing him to prison because of " 'excessive criminality,' " was apparently misled into thinking some of the arrests resulted in convictions, materially relied on those arrests to reach an improper conclusion of " 'excessive criminality' " (Welf. & Inst. Code, § 3051), and the error was prejudicial because it was the only basis for denying CRC treatment which was otherwise compelled by the record.[4]

 Unlike *Romero,* no error and no prejudice have been demonstrated in this case. There is no evidence the court mistook arrests for convictions, and in any event appellant was sentenced to state prison because of the seriousness of his offense and substantial evidence that he was trafficking

---

[4]*In re Michael R., supra,* 73 Cal.App.3d 327, was decided by the same court that decided *Romero.* By adding italics to the quotation from the advisory committee on the American Bar Association's Standards for Criminal Justice, the court indicated that the *Calloway* case is limited to the principle that " *'a detailed effort should be undertaken to assure that the reader of the report cannot possibly mistake an arrest for a conviction.'* " (*Id.,* at p. 335, fn. 5; italics added by the *Michael R.* court.)

in narcotics, as well as the fact he committed this offense while on probation and CRC outpatient status on a prior offense. The court did not err in receiving and commenting upon appellant's prior arrests.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.