[No. G007375. Fourth Dist., Div. Three. June 21, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRY JOSEPH READ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976(b), parts II and III are not published, as they do not meet the standards for publication.

COUNSEL

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Robert M. Foster, Pat Zaharopoulos and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MOORE, J.—Appellant was convicted by jury of attempted burglary and he was sentenced to state prison for the middle term of two years. On appeal, he alleges the court committed reversible error by instructing the jury on flight after crime. He also challenges the admissibility of evidence

concerning an alleged escape attempt from an Orange County jail approximately six weeks after the crime. In addition, he seeks reversal of his state prison sentence on the ground that the court did not state sufficient reasons for denying probation. We affirm the conviction but remand the case for resentencing.

## I

### FACTS

### THE PROSECUTION'S CASE

On June 8, 1988, Teresa Mihelic resided with her husband, Dennis Mihelic, at an apartment in Newport Beach. At 1 a.m., in the upper of three levels within the unit, she heard a noise at the balcony door below. As she awoke Dennis, she heard a window, which was always kept closed, slide open. An empty purse and camera were on a counter very near the window and door.

Dennis grabbed a flashlight and ran downstairs while Teresa called 911. Dennis saw someone on his balcony. He illuminated the intruder with the flashlight and watched him climb over the railing on the balcony to the catwalk alongside the building. When the intruder, running, reached the end of the catwalk, he climbed down to the alley. Dennis saw the man walk between his building and the building next door in the direction of the beach. He yelled at him, but the intruder did not stop. Dennis grabbed his baseball bat and gave chase.

Dennis's neighbor heard someone yell, "Hey, wait," so he looked out and saw appellant walking between the two buildings toward the beach. Appellant was wearing a reddish-plaid untucked shirt and Levis, and he had unkempt wavy, brown hair. The neighbor joined Dennis in pursuit.

When the two men reached the sand, the intruder was gone. Dennis walked around the area for a minute or two and was circling back to his apartment when the police arrived. He told the officers what had happened and he described the intruder as five feet, ten inches, to six feet tall, medium build, having brown, wavy collar-length hair, and wearing blue jeans and a red flannel shirt not tucked in.

Meanwhile, one of the responding police officers began a foot patrol and saw appellant wearing headphones. Appellant was the only person walking in the six- or seven-block area the officer covered. Appellant matched the description the officer had heard over the radio since he was a White male

wearing a red plaid shirt. The officer drew his weapon and said, "Police, don't move." Appellant did not react until the officer yelled a second time. When back-up arrived, the officer asked appellant his name and appellant gave the name Raymond Joseph Myer, nickname Ray. Appellant had less than $2 in cash on him at the time.

Within five minutes of their arrival, officers asked Dennis and his neighbor to look at a man they had stopped. Although neither man had seen the intruder's face, Dennis positively identified appellant as the intruder from his body size and shape, hair color and style, and his clothing and the way it was worn. Dennis's neighbor was also positive the man the police had stopped was the man he had seen walking toward the beach.

A crime scene investigator went to the Mihelic home on June 8, 1988, but he was unable to locate or lift any latent fingerprints because the exterior of the building was too near the ocean and affected by the corrosive weather, blowing sand, and salt spray of the waves. In addition, the door handles were corroded and the window ledge was made of stucco. Both surfaces were too rough to retain a fingerprint.

On July 22, 1988, at 10 p.m., Deputy Sheriff Chacon was on duty at Theo Lacy Branch Jail when he saw appellant running on the gatehouse roof outside the fenced area. In order to get to that spot, appellant would have had to climb onto the jail roof and jump over a fence to reach the gatehouse. Appellant stopped on Chacon's orders and Chacon apprehended him. Appellant's eye was bleeding and swollen.

### DEFENSE

Appellant testified in his own behalf. On June 8, 1988, he was staying with a girl he had met on June 6, 1988, while riding his bicycle in Newport Beach. He knew her only as Kelly. She lived at an unknown address on Balboa Boulevard.

That night, appellant left his bike at Kelly's house and went for a walk. He ended up at a restaurant where he ate pizza, drank two beers, and played "Foosball." He left the restaurant at midnight and was walking the two miles back to Kelly's place on Balboa when he was arrested. Appellant's shirt was tucked in, but the officer who searched him pulled it out.

Appellant lied about his name when arrested because the officer wanted to question him and appellant just wanted to shut the officer up. He also lied about his social security number, but that was to stall until he could get legal counsel. He also told the officer he worked at a particular construction

company even though he had not been employed there for three years. He also lied about his date of birth. He did not tell the police about Kelly.

According to appellant, he never tried to enter the Mihelic residence, nor did he walk between the two buildings toward the beach.

On July 22, 1988, at Theo Lacy Branch Jail, appellant was waiting in line for medication at the nurse's station and he grabbed onto a drain pipe and swung up to a six-foot wall that took him to the roof. Appellant was fleeing from other inmates when he was found on the roof. He was not escaping. Sometime earlier, appellant had been attacked by four other inmates in a fight during a card game. After that incident, appellant received death threats. That night, he knew other inmates were coming for him.

## II, III*

. . . . . . . . . . . . . . . . . . . . .

## IV

### APPELLANT IS ENTITLED TO RESENTENCING

██ Appellant asks us to remand his case for resentencing because the court erroneously determined he was statutorily ineligible for probation and did not qualify for an exception as provided by rule 416 of the California Rules of Court. He avers that Penal Code section 462, which mandates a denial of probation for a conviction of burglary of an inhabited dwelling, does not apply to appellant's crime of attempted burglary. Since the court incorrectly found him ineligible for probation under Penal Code section 462, he contends the finding by the sentencing judge that the crime involved planning, sophistication, and professionalism was not supported by the facts and constitutes insufficient reason to deny him probation. We agree.

██ Probation is an act of clemency that is granted only in the discretion of the judge. (*People* v. *Towe* (1984) 158 Cal.App.3d 368, 372 [204 Cal.Rptr. 733, citing *People* v. *Phillips* (1977) 76 Cal.App.3d 207, 213 [142 Cal.Rptr. 658].) An order denying probation may be reversed for failure to consider an application for probation on its merits, unfair hearing procedures, receipt of an ex parte communication, or a clear abuse of discretion. An arbitrary refusal of probation or a denial of probation based on a mistaken belief of ineligibility constitute reversible error. (3 Witkin, Cal. Criminal Law (2d ed.

---

*See footnote, *ante*, page 685.

1989) §§ 1653-1654, p. 1967; see *People* v. *Arredondo* (1975) 52 Cal.App.3d 973, 981 [125 Cal.Rptr. 419].)

In this case, when the judge imposed the middle term two-year state prison sentence, he said: "The court has considered probation and rejects it for various reasons, among which are, in accordance with the probation department recommendation, you are ineligible for probation except in an unusual case. I've reviewed the rules under 416 of the California Rules of Court and find that you do not qualify. [¶] Further there was planning, sophistication, and professionalism involved."

The court was referring to a statement within the probation report that said, "[p]er 462 PC, this defendant is eligible for probation in unusual circumstances only. A review of Rule 416 reveals that the defendant does not qualify under those criteria."

 Penal Code section 462, subdivision (a), precludes probation for any person convicted of a burglary of an inhabited dwelling house "[e]xcept in unusual cases where the interests of justice would best be served . . . [by] probation . . . ." California Rules of Court, rule 416, enumerates criteria for determining the existence of an unusual case. They include cases where a defendant with no recent record of violence acts without planning or under great provocation, a defendant has led a crime-free life for a substantial period of time, a defendant committed a crime under coercion or duress or because of psychological problems, and a defendant's imprisonment would worsen a health problem suffered by the defendant or a member of his or her family.

The law relating to the application of Penal Code section 462 to attempted burglary has not been explored. There is no case law, but respondent argues it does not make sense to treat those who are unsuccessful in a burglary more favorably. Yet that is just what the law does when it provides that attempts are ordinarily punishable by half the amount of time in prison as completed crimes. (Pen. Code, § 664.) More importantly, there is no basis for believing the Legislature intended to punish attempts with mandatory prison, when it did not so specify in the statute. To read in such a broad extension would be invading the province of the Legislature by creating a new category of mandatory prison crimes.

Since we hold the court erroneously applied Penal Code section 462 to appellant's conviction for attempted burglary, we must determine whether the court gave sufficient other reasons for denying probation and imposing a sentence to state prison for the middle term.

■ Although the element of "planning, sophistication, and professionalism," is a factor justifying denial of probation, the facts in this case do not support such a finding. Even though appellant's bungled burglary was a second story break-in, there was no indication of professionalism, no sign of planning, and the sophistication with which it was carried out was questionable.

Since the "planning, sophistication and professionalism" are unsupported, and the judge's belief this was a mandatory prison case is inaccurate, we remand the case for resentencing. We cannot tell from the record whether the court would have sentenced appellant to prison anyway, although the probation officer recommended denial of probation for several reasons in addition to statutory ineligibility. With this defendant's extensive criminal history, which the judge failed to state was considered, the result may be the same.

The conviction is affirmed. The sentence is reversed, and the case is remanded to the trial court for resentencing.

Sonenshine, Acting P. J., and Wallin, J., concurred.