Filed 9/16/14  P. v. Franco CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PAULINO FRANCO, JR.,<br><br>    Defendant and Appellant. | F066932<br><br>(Super. Ct. Nos. VCF225749,<br>VCF246480, VCF270098)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Edward M. Lacy and H. N. Papadakis, Judges.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Henry J. Valle, Deputy Attorneys General, for Plaintiff Respondent.

-ooOoo-

Paulino Franco, Jr., was convicted of being a felon in possession of a firearm.  He also was found to be in violation of the terms of his probation in two prior cases and was sentenced for all three.  He now argues that the prosecution failed to establish the corpus

delicti of the felon in possession of a firearm offense independently of his confession. We reject this contention.

The parties agree that the abstract of judgment contains an error of $10 on one of the fees imposed by the trial court. We will order this error corrected and otherwise affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Visalia Police Officer Dirk Alfano was on patrol with his partner, Officer Adam Collins, on May 25, 2012. As they drove south on Burke Street, Alfano spotted Franco, whom he recognized, driving north. He made eye contact with Franco. Alfano believed Franco's license was suspended and knew he was on probation, so he asked Collins (who was driving) to turn around and follow Franco. Collins made a U-turn and turned on the police car's flashing lights. According to Alfano's trial testimony, Franco "began to speed up" as the police car turned. Franco then "made a hurried turn" onto Laurel Avenue. By the time the officers followed onto Laurel, Franco's car was parked in front of the home of Franco's passenger, Antonio Velasquez. Franco and Velasquez were getting out of the car.

As Alfano got out of the police car, Franco headed for the front door of the house "in a hurried manner." Alfano ordered Franco to stop. Franco complied. Velasquez, however, disobeyed an order to stop, according to Collins's testimony, and started to jog into the back yard. As Collins followed, he heard a thud that sounded like something hitting the roof. Velasquez submitted to arrest after Collins drew his gun. A subsequent search revealed a loaded handgun on the roof by the backyard where Velasquez surrendered.

Alfano interviewed Franco at the police station. At first, Franco denied that there had been a gun in the car. Toward the end of the interview, he admitted that the gun was his. He said he had the gun in his pants pocket when he spotted the police car. Then he sped up, headed for Velasquez's nearby house, took the gun out of his pocket and held it

2.

on his lap.  At the house, Velasquez took the gun, got out and tried to get rid of it.  The interview was not recorded.

The district attorney filed an information charging Franco with two counts: (1) being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1));[1] and (2) carrying a loaded firearm in a public place (§ 25850, subd. (a)).  The information alleged that both counts were committed at the direction of, in association with, or for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).  For sentence-enhancement purposes pursuant to sections 667 and 1170.12, and for purposes of probation eligibility under section 1203, the information alleged that Franco had one prior strike conviction and two other prior felony convictions.  The gang allegations were later dismissed at the request of the prosecution.

Franco testified at trial.  He denied that he confessed to possessing the gun and said he was not aware that a gun was in the car.  He also said he did not notice the police car until after he got out of his car at Velasquez's house.

The jury found Franco guilty on count 1, being a felon in possession of a firearm. It found him not guilty on count 2, carrying a loaded gun in a public place.  Franco admitted the prior convictions.

At the time of his arrest, Franco was on probation in two prior cases, one for unlawful possession of ammunition (former § 12316, subd. (b)(1)) and one for being an accessory to murder after the fact with a gang enhancement (§§ 32, 186.22, subd. (b)(1)(a)).  The court found that Franco violated the terms of probation in those cases.  It terminated his probation.

The court imposed sentence for the two probation cases as well as the current conviction.  For the accessory-to-murder conviction, the court sentenced Franco to two years, the middle term, plus three more years for the gang enhancement.  For the

---

[1]Subsequent statutory references are to the Penal Code unless noted otherwise.

ammunition-possession offense, the court imposed a consecutive sentence of eight months, one-third of the middle term. The court sentenced Franco to 16 months consecutive, equal to one-third of the doubled middle term, for the current conviction. The total sentence was seven years.

### *DISCUSSION*

**I.      *Corpus delicti***

Franco's sole argument on appeal (apart from the clerical error) is that the prosecution failed to establish the corpus delicti of the offense of being a felon in possession of a firearm by evidence independent of his out-of-court statement. We disagree.

The corpus delicti rule was set forth by the California Supreme Court in (among many other cases) *People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-1169:

> "In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant …. [¶] … This rule is intended to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened."

The standard of proof for establishment of the corpus delicti independent of the defendant's out-of-court statements is low:

> "The amount of independent proof of a crime required for this purpose is quite small; we have described this quantum of evidence as 'slight' [citation] or 'minimal' [citation]. The People need make only a prima facie showing '"permitting the reasonable inference that a crime was committed."' [Citations.] The inference need not be 'the only, or even the most compelling one … [but need only be] a *reasonable* one ….' [Citation.]" (*People v. Jones* (1998) 17 Cal.4th 279, 301-302.)

Franco's argument is that the corpus delicti was not established by evidence independent of his confession because nothing showed that he—as opposed to Velasquez—ever possessed the gun. Franco acknowledges that the corpus delicti rule

4.

ordinarily requires evidence only that *a crime happened*, and does not require any evidence of the *identity of the perpetrator*. He contends that this case is an exception to this rule because an element of the offense is the perpetrator's status as a felony convict, and because there was no evidence that Velasquez was a felon. If the crime was committed at all, Franco argues, it had to be committed by him, so proof of the corpus delicti needed to include evidence that he did it.

Even assuming Franco is correct on this point, the prosecution satisfied its burden of producing slight evidence of the corpus delicti. Possession of an item can be established by a showing that the defendant had knowledge of the item's presence and exercised dominion and control over it. (*People v. Mejia* (1999) 72 Cal.App.4th 1269, 1272.) There is evidence from the actions of Velasquez that the gun was in the car. Franco clearly exercised dominion and control over the car. Therefore, the primary remaining issue where slight evidence was required was Franco's knowledge of the gun. According to the police testimony, Franco sped up as the police car turned to follow him, and then hurriedly turned and parked at Velasquez's house. He and Velasquez were both out of the car and making for the house when the officers caught up with them. Then Velasquez disobeyed an order to stop so that he could attempt to hide the gun. This testimony was at least slight evidence that Franco, being known to the officers and having realized that they recognized him driving on a suspended license, was taking steps in concert with Velasquez to get rid of the gun before the police could pull them over. Their plan was to get to Velasquez's nearby house quickly and hide the gun before the police arrived. If this is what happened, then Franco both knew about the gun and was acting to control what happened to it. Under the minimal "slight evidence" standard applicable to the corpus delicti analysis, the police testimony was sufficient to support an inference that this is what happened.

Franco argues that it would have been impossible for the officers to perceive any acceleration of Franco's car because "it is such a short distance" between the point where

5.

the officers saw the car and the street onto which it turned. Instead, he says, he would "have necessarily had to slow the vehicle's speed in order to turn" onto Velasquez's street. This, however, is pure speculation, as the record contains no evidence about the distance in question, the car's capabilities, or the limits of human ability to detect acceleration.

Franco also contends that *People v. Hilliard* (1963) 221 Cal.App.2d 719 "teaches that the appearance of minimal, if any, evasive behavior is not sufficient to prove knowing possession of the firearm." *Hilliard* does not state or imply any such proposition. Hilliard, who was known to police, ran away when officers walked toward him. They pursued. During the chase, the officers' view of Hilliard was blocked by a building for a few moments. After they caught Hilliard, they searched the area beside that building and found a gun under some litter, still warm to the touch. Hilliard said he knew nothing of it, but later made a self-incriminating statement. (*Id.* at pp. 721-722.) On appeal, he claimed the corpus delicti of firearm possession by a felon was not established independently of this statement because it was not shown that he possessed the gun. The Court of Appeal rejected this argument. Its analysis, in its entirety, was: "We think that under the circumstances of this case, it was reasonably to be inferred that the appellant had been in possession of the pistol until he disposed of it." (*Id.* at p. 724.) The case thus supports Franco's position in no way. Franco appears to be arguing that *Hilliard* helps him because the evidence against Hilliard was stronger than the evidence against Franco, but *Hilliard* contains nothing implying that it represents a minimum level of evidence for corpus delicti purposes.

## II.  *Clerical error in abstract of judgment*

The abstract of judgment includes a total court operations assessment of $120 pursuant to section 1465.8. This evidently represents $40 for the current conviction plus $40 for each of the two probation cases. Forty dollars is the amount of the assessment provided in the current version of section 1465.8. In 2009, however, when Franco was

6.

convicted in the first of the probation cases, the statute provided for an assessment of $30. (Stats. 2009, 4th Ex. Sess. 2009-2010, ch. 22, § 29.) At the sentencing hearing, the court correctly imposed a court operations assessment of $30 for this conviction. The total therefore should be $110, not $120. The parties concur on this point. We will order the error corrected.

### *DISPOSITION*

The trial court is directed to amend the abstract of judgment to change the total court operations assessment (§ 1465.8) from $120 to $110 and to forward the amended abstract to the appropriate correctional authorities. The judgment is affirmed in all other respects.

_____
Chittick, J.[*]

WE CONCUR:


_____
Poochigian, Acting P.J.


_____
Franson, J.

---

[*]Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.